**Comer Ellis BREWER**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee.

Nov. 5, 1973.

W. S. Fleming, Thomas W. Hardin, Columbia, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Nashville, J. Alonzo Bates, Dist. Atty. Gen., Centerville, for the State.

## OPINION

McCANLESS, Justice.

The defendant, Comer Ellis Brewer, on October 12, 1971, was convicted of third degree burglary and was sentenced to a term of three years in the penitentiary. The question before this Court involves the introduction during cross-examination and rebuttal of otherwise inadmissible evidence for the purpose of impeaching the credibility of the accused.

The facts show that the Ray Grimes Hardware Store in Hohenwald was burglarized on the night of November 25, 1970, and 24 guns and some ammunition were stolen. On November 28, 1970, Maury County Sheriff's officers arrested the defendant as he walked along a street. After placing him in jail and obtaining a search warrant, they searched his home and seized five guns. The officers also searched the home of one of the defendant's acquaintances, Harold Tyribakken, and found 19 guns and ammunition. At the trial counsel for the defendant moved to quash the search warrant and to suppress all evidence seized under it. The District Attorney General agreed in court that the warrant used to search Brewer's home was void due to lack of probable

cause and failure to describe the articles specifically. The State's chief witness was Tyribakken, who testified that the defendant visited his home on November 25 or 26 and left the 19 guns and boxes of ammunition there for storage. There was no testimony during the State's case concerning the guns founds in the defendant's home.

The defendant's case consisted of two witnesses—the defendant himself, and his wife. On direct examination the defendant testified that he was sick at home at the time of the burglary. He also denied the alleged visit to Tryibakken's house. He made no mention of guns in any context. On cross-examination the District Attorney General began his questioning in the following manner:

Q. "You say you were not involved in this burglary and had never been to Mr. Tyribakken's house?

A. "That's right.

Q. "How did these two pistols and two rifles and this shotgun get into your house?"

Defendant's counsel objected, but was overruled. The State then continued to examine the defendant in detail about the five guns discovered in his home. The defendant's wife was also asked about the guns on cross-examination. The State then put on the stand an agent of the Tennessee Bureau of Criminal Identification who identified the guns found in Brewer's house as being among those stolen in the hardware store burglary.

The defendant's motion for a new trial was denied. On appeal, the Court of Criminal Appeals, by a divided panel, reversed the conviction and remanded the case. The State was granted its petition for certiorari, and review was limited to this question which we paraphrase: When the defendant takes the stand and denies participation in the crime, can the State on cross-examination and rebuttal introduce evidence inadmissible, because of an illegal

search and seizure, in order to impeach the defendant's credibility?

Both parties, and the Court of Criminal Appeals, agree that the resolution of this issue rests in three decisions of the United States Supreme Court: Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 [1925]; Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 [1954]; and Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 [1971]. We note first that the exclusionary rule established in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 [1914] is well established law in Tennessee. See, e. g., Shafer v. State, 214 Tenn. 416, 381 S.W.2d 254 [1964]. We also note that there is no question of the fact that the search of the defendant's home was in violation of rights protected by the Fourth Amendment to the United States Constitution and by Article 1, Section 7 of the Tennessee Constitution. The illegally seized evidence therefore could not be used in the State's case in chief. The question is, under these facts, could it be used for impeachment?

The Supreme Court of the United States first ruled on this issue in Agnello v. United States, supra. There, one of the defendants, Frank Agnello, was charged with selling bags of unregistered cocaine to government undercover agents. On direct examination, Agnello denied knowledge of the contents of the bags. He made no mention of a can of cocaine which the government seized in an illegal search of his house. On cross-examination, the government asked Agnello, "Did you ever see narcotics before?" After his denial, the government then sought to introduce into evidence the can of cocaine. The court, in disapproving the government's action, said:

"In his direct examination, Agnello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify

cross-examination in respect of the evidence claimed to have been obtained by the search." Agnello v. United States, 269 U.S. 35, 46 S.Ct. 7.

In Walder v. United States, supra, the court established an exception to the rule of Agnello v. United States. In the *Walder* case, the defendant also broadly denied the charge against him, but went a step further on direct examination and proclaimed that he had never possessed narcotics in his life. The court then allowed the government, on cross-examination, to ask Walder about narcotics which had been discovered in his home during an illegal search in a different case two years before. Mr. Justice Frankfurter, writing for the majority, specifically distinguished the facts in *Walder* from those in *Agnello*. He said:

"Of his own accord, the defendant (Walder) went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." Walder v. United States, 347 U. S. 65, 74 S.Ct. 356.

The latest ruling of the Supreme Court of the United States on the impeachment issue is Harris v. New York, supra. There the defendant was charged with selling glassine bags of heroin to undercover policemen. After his arrest he told the police that he was only acting as a middleman between the pusher and the buyer, and that for his services he received twelve dollars and a quantity of the stock of heroin from which the sale was made. The statement, however, was given without the required *Miranda* warning (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [1966]) of right to counsel. At his trial on direct examination, Harris admitted selling the bags, but said they contained baking soda instead of heroin. On cross-examination, the State then questioned the defendant on the basis of the otherwise inadmissible statement obtained in violation of the Fifth Amendment. Mr. Chief Justice Burger, writing for the five man majority, held that if the statement is otherwise trustworthy, it can be used to discredit the defendant's direct testimony.

In our opinion, the tainted evidence in this case was inadmissible for impeachment purposes for the same reasons which led to the court's decision in Agnello v. United States. There, the can of cocaine was not admitted because the defendant did not mention it on direct examination. Here, evidence pertaining to the guns should not be admitted because the defendant did not mention them in his direct testimony. In neither case did the defendant say anything on direct examination that could be directly impeached by the inadmissible evidence. The State contends that Harris v. New York overrules the *Agnello* decision. But we are not shown conclusively that this is true. In *Harris,* and in *Walder*, statements made by the defendants in direct testimony could be directly impeached by the evidence in question. Moreover, the *Harris* court, which must have been aware of the long established *Agnello* case, made no mention of *Agnello* in its brief opinion. This question is in dispute among the legal commentators. See e. g. 85 Harv.L.R. 44, n. 24 at 47 [1971] (*Agnello* not overruled), and 80 Yale L.J. 1198, 1213 [1971] (*Agnello* "squarely" overruled).

We find support for our view in the case of Tooley v. State, 1 Tenn.Cr.App. 652, 448 S.W.2d 683 [1969]. There the defendant was charged with first degree murder. In an illegal search conducted without a warrant, police found blood on a

rug and an incriminating piece of paper in the defendant's car. The court said:

> "Although the evidence was illegally seized, the defendant testified at the trial, and both on direct examination and cross-examination said that blood was on the seat, carpet and door of his automobile and on his clothes there as well as on his person. . . . . .
>
> "A defendant may make illegally seized evidence admissible by his testimony on direct examination." Tooley v. State, 448 S.W.2d 686.

As direct authority for this proposition, the court cited Walder v. United States, supra. As indirect authority, it cited a line of Tennessee cases holding that evidence from an illegal search and seizure can be admitted if the defendant on direct examination admits possession or ownership of the articles seized. E. g., Lester v. State, 216 Tenn. 615, 393 S.W.2d 288 [1965]. The statements a defendant makes on direct examination may qualify as an exception to the exclusionary rule and open the door to otherwise inadmissible evidence under the rules of Walder v. United States; Tooley v. State, or Lester v. State. Such was not the case here, however. Brewer merely took the stand and broadly denied the charge against him.

There is another reason why we do not approve the State's use of tainted evidence in this case. The Supreme Court, in both *Walder* and *Harris*, carefully pointed out that the trial court in each case had instructed the jury that the tainted evidence should be considered only for impeachment purposes, and should not be considered in deciding the substantive issue of guilt. Harris v. New York, 401 U.S. 223, 91 S.Ct. 643; Walder v. United States, 347 U.S. 64, 74 S.Ct. 354. In our case, the trial court gave only general instructions as to the credibility of witnesses. No specific instructions were given to the jurors to explain the use they were to make of the inadmissible evidence. In effect, the absence

of this safeguard allowed the evidence to be exposed to the jury just as effectively as though it were used by the State in its case in chief. These circumstances may arise in every case in which an illegal search and seizure turns up highly prejudicial evidence, and in which the defendant takes the stand to exercise his right to deny the charges against him. To adopt the State's position under the facts of this case would be virtually to nullify the defendant's right to take the stand in his own defense, and would also weaken the deterrent effect of the exclusionary rule.

We affirm the judgment of the Court of Criminal Appeals and remand the case to the trial court for proceedings in accordance with this opinion.

DYER, C. J., and CHATTIN and FONES, JJ., concur.

LEECH, Special Justice, not participating.