571 P.2d 671
**STATE of Arizona, Appellee,**

v.

**Clayton William DOYLE, Jr., Appellant.**

**No. 3846.**

Supreme Court of Arizona,
In Banc.

Nov. 9, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, David J. Damron, Asst. Public Defender, Tucson, for appellant.

GORDON, Justice:

Two questions, both concerning separate motions to suppress, have been raised by the appellant, Clayton W. Doyle, Jr.: (1) whether the .22 caliber revolver discovered on appellant during a "stop and frisk" should have been suppressed; (2) whether appellant's incriminating statements made following his arrest for carrying the above weapon in a concealed manner were tainted, requiring suppression.

On September 10, 1976 Deputy Alvin B. Sargent was on patrol in the Green Valley vicinity. Early that morning, Deputy Sargent received a report concerning a suspicious person looking into the automobiles parked at the Lucky's supermarket. He proceeded to the store, checked the parking lot and then questioned the store manager and two delivery men at the rear entrance. The three men described the suspect as being a white male, approximately 25 years old wearing dark or black clothing. They stated the person had next gone to an apartment parking lot. As Deputy Sargent was leaving to investigate, he was approached by another employee who overheard the above conversation. This employee volunteered he had seen a person matching the description hitchhiking along Interstate 19 north of Green Valley. Deputy Sargent proceeded along I-19 where he

spotted the appellant, wearing a dark blue jacket and levis, hitchhiking. Doyle, apparently in response to the approach of the marked patrol car, withdrew his arm from the traditional hitchhiking posture. Deputy Sargent then drove across the median to where he had originally seen Doyle standing. By this time appellant had walked away from the highway approximately 15 feet to a barbed wire fence. Then according to Deputy Sargent's testimony at the hearing on the motion to suppress:

"A. I parked my car, I got out, and I walked to the rear of my car, facing him; I motioned, 'Come here—' and I said, 'Come here.' At that point he continued another few feet, jumped the fence, and started walking rather rapidly in a— mostly westerly, but a little bit southerly direction, also.

"Q. Deputy Sargent, at the time that you motioned for Mr. Doyle to come in your direction, told him, 'Come here,' was he looking at you?

"A. Yes, he was.

"Q. Please continue.

"A. He jumped the fence and started walking—I ran to the fence, jumped it, ran to where he was. As I reached the point where he was, he turned around to look at me, and I grabbed him to turn him around a little bit more, and—began a pat-down search.

"Q. Did you feel anything—

"A. Yes, I did.

"Q. —when you first turned him around?

"A. As I touched him to turn him around I felt a solid lump, right here.

"Q. Was it a hard feel, or was it soft, like a—

"A. It was a solid, hard object.

"Q. Was it underneath the shirt?

"A. He had on a jacket. And then there was also an undershirt.

"Q. What did you do then?

"A. I raised up the jacket to see what it was, and I could see a lump sticking out underneath the T-shirt. I raised up the T-shirt and saw the butt of a revolver. And I removed the revolver."

After discovering the weapon, the Deputy ran a check on appellant, discovering an outstanding traffic warrant. Doyle was then arrested for carrying a concealed weapon, hitchhiking on the freeway and on the traffic warrant. Deputy Sargent transported Doyle to the Lucky's supermarket where the employees failed to identify him as the suspicious individual originally reported.

Doyle was subsequently taken to Tucson by another deputy who recognized him as a person wanted in connection with a murder. Later in Tucson, he was interrogated by Detective Bunting of the Tucson Police Department homicide detail. During the interrogation, appellant confessed to shooting a companion twice in the head while his companion was "nodding off". The motive was to obtain heroin which the victim had refused to share.

Following a trial, appellant was found guilty and sentenced to life imprisonment for first degree murder and 20 to 40 years for armed robbery (taking the heroin). We have jurisdiction in this appeal pursuant to A.R.S. § 13–1711.

In this case, as in most cases concerning suppression of evidence, there was a slight conflict in the testimony.

During the suppression hearing, upon being cross examined about the sequence of events after appellant had jumped the fence, Deputy Sargent testified:

"A. That was when he jumped the fence.

"Q. Okay. And he didn't run at that point, did he?

"A. After he jumped the fence?

"Q. Yeah.

"A. No.

"Q. All right. Then you went over, and you jumped the fence, and you—you got a hold of him, and immediately began a pat-down search; is that right?

"A. Right.

"Q. And the pistol that you later discovered as a result of that search wasn't visible at the time you conducted the search, is that right?

"A. Right.

"Q. Did—what actions other than walking away from you, Deputy Sargent, did you observe on the part of Mr. Doyle that may have led you to believe that he was armed at that point?

\* \* \* \* \* \*

"THE WITNESS: I believe that for some reason Mr. Doyle didn't want to stick around to talk to me, and—I felt that it was reasonable to conduct a pat-down search for my own safety.

"BY MR. CALLAWAY:

"Q. Did—at—prior to—to conducting that pat-down search, did you ask Mr. Doyle any questions?

"A. No.

"Q. You didn't ask him where he had been?

"A. No.

"Q. Where he was going?

"A. No.

"Q. For any identification?

"A. No.

"Q. Let me ask you this, Deputy Sargent. When you give a person a—I assume you give a person a citation for hitchhiking on the freeway; is that right?

"A. Yes.

"Q. And there's a summons for them to appear is that correct?

"A. That is the complaint.

"Q. Okay. And so it's not something that you normally—we're talking now in the absence of the person committing any other crime, but simply hitchhiking on the freeway, if they give you proper identification, and so forth—it's not the type of offense that you normally take a person into custody for; is that correct?

"A. For that alone, no.

"Q. All right. In other words, you don't write them a citation and take them down to the jail and book them in on it? If that's all we're talking about, hitchhiking on the freeway?

"A. Right.

"Q. All right. And—so you immediately, after grabbing Mr. Doyle, conducted the pat-down search and found the pistol, and at that point you felt you had probable cause to arrest him for carrying a concealed weapon, and that's what you did? Is that right?

"A. Right."

Appellant, on the other hand testified:

"Q. Okay. And what did you do when he got on the other side of the fence?

"A. I just stood there, and he came up to me—I don't recall any physical contact at that time, him turning me around, or anything, as he said. He—he just started questioning me about what I was doing in Green Valley, and—and where I was going at this time, and—and I—I didn't know what he was talking about.

"Q. While he was doing that—when did he begin to search you?

"A. I guess he did notice a lump, or something, underneath my—my jacket. And he—he asked me for my I.D. then. And, as I was going for that, he just kind of brushed his hand down the front of my body, and he felt it then, and then—he proceeded to search me from there.

"Q. Before you showed him your identification?

"A. Yes."

Based, in part, on this conflicting evidence, the trial court found a rational basis for the investigatory stop. In considering the search, the trial court concluded:

"You have to consider, in my mind, the fact that we're dealing on a one-on-one situation in a desolated area. Unlike the *Baltier* case, it was two police officers, and it was at Himmel Park, so—we're in a desolate area, one-on-one situation, a fellow apparently is not responding to normal inquiries of a policeman. And, even at that point, before the—the—before a pat-down is really conducted by turning him around, there is apparently the touching of one body against the other, and the—the lump is felt there. And I think that at that point, certainly, it was reasonable to pat down under the circumstances."

As is often stated, the trial court is in a unique position to judge the veracity of a

witness. Thus, "When the trial court's determination is supported by substantial evidence, this Court will not substitute its evaluation of the evidence in an attempt to reach or justify a different conclusion." *State v. Eliason*, 25 Ariz.App. 523, 526, 544 P.2d 1124, 1127 (1976). *See also State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976).

We do not question the trial court's view of the evidence, however we must still determine whether the facts render either the investigatory stop or the subsequent search violative of appellant's Fourth Amendment rights. In determining these issues, we return to the standards of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where it was stated "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest". *Id.* at 22, 88 S.Ct. at 1880; *accord Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Fortier, supra.*

We believe Deputy Sargent acted in a reasonable manner by investigating the report of a suspicious individual walking from car to car in a parking lot peering inside each auto during early morning hours. Although the description which the deputy received was limited, he was justified in following the tip of the stockboy who indicated a person matching the description was hitchhiking along the Interstate Highway. This coupled with the fact that appellant walked away when approached by the marked patrol car, although insufficient for the probable cause necessary for an arrest, constituted a reasonable basis for an investigatory stop. *State v. Nichols*, 26 Ariz.App. 455, 549 P.2d 235 (1976); *People v. Mathis*, 542 P.2d 1296 (Colo.1975).

In spite of having determined that the investigative stop was proper, it seems clear the information which led to the stop would not have been sufficient to warrant the subsequent search of appellant. In *Terry v. Ohio, supra*, the United States Supreme Court concluded:

"[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual * * *. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (citations omitted.) *Id.*, 392 U.S. at 27, 88 S.Ct. at 1883.

Deputy Sargent testified that the pistol was not visible, and he did not ask appellant any questions prior to the search. Except for appellant's walking away, and then stopping, the Deputy was unable to point toward any facts which would lead to a reasonable conclusion that appellant was armed. *State v. Baltier*, 17 Ariz.App. 441, 498 P.2d 515 (1972); *People v. Lawler*, 9 Cal.3d 156, 107 Cal.Rptr. 13, 507 P.2d 621 (1973). However, when Deputy Sargent grabbed appellant to turn Doyle around, he inadvertently felt the tell-tale hard object. This fact alone constituted the proper basis for the search.

Since we have concluded the search and finding of the weapon was proper, appellant's arrest and subsequent confession were not fruits of the poisonous tree. We also note appellant was properly advised of his rights in accord with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and waived these rights prior to his confession.

Judgment of the superior court affirmed.

CAMERON, C. J., and STRUCKMEYER, V. C. J., concur.

HAYS and HOLOHAN, JJ., concur in the result.