Argued and submitted June 21, resubmitted In Banc October 9, affirmed November 14, 1985, reconsideration denied January 10, petition for review denied February 19, 1986 (300 Or 546)

# STATE OF OREGON,
*Respondent,*

*v.*

# FRANK DUANE MILLS,
*Appellant.*

## (10-84-00949; CA A33723)

710 P2d 148

In Banc

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

GILLETTE, J.

Newman, J., dissenting.

## GILLETTE, J.

Defendant appeals his convictions for sodomy in the first degree, ORS 163.405,[1] and sexual abuse in the first degree. ORS 163.425.[2] He argues that the trial court erred in its partial denial of his motion to suppress statements which, although ruled inadmissible for use by the state in its case-in-chief, were allowed for use as impeachment evidence. We affirm.

In January, 1984, the Eugene Police Department received a report that defendant was allegedly engaging in sexual contact with a six-year-old boy. During the ensuing investigation, defendant was interviewed by two members of the Eugene Police Department, Officer Harada and Detective Poppe. On four different occasions, defendant allegedly made incriminating statements: (1) in a telephone call he made to Harada on January 15, 1984; (2) in two telephone calls to Poppe on January 16, 1984; and (3) during an interview with Poppe at the Linn County Jail on February 8, 1984, where defendant was being held on an unrelated charge.

At a pretrial hearing, defendant moved to suppress

---

[1] ORS 163.405 provides:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a) The victim is subjected to forcible compulsion by the actor; or

"(b) The victim is under 12 years of age; or

"(c) The victim is under 16 years of age and is the actor's brother or sister, of the whole or half blood, his son or daughter or his spouse's son or daughter.

"(2) Sodomy in the first degree is a Class A felony."

[2] ORS 163.425 provides:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact; and

"(A) The victim is less than 12 years of age; or

"(B) The victim is subjected to forcible compulsion by the actor; or

"(b) Subjects another person to sexual intercourse, deviate sexual intercourse or, except as provided in ORS 163.412, penetration of the vagina, anus or penis with any object not a part of the actor's body, and the victim does not consent thereto.

"(2) Sexual abuse in the first degree is a Class C felony."

the three sets of statements. The trial court held the two sets taken over the telephone admissible, ruling that they were noncustodial and voluntarily given. However, the statements taken at the Linn County jail were ruled inadmissible on the court's finding that Poppe had continued to question defendant after he had requested an attorney. *See Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981). Defendant's statements made at the jail were accordingly suppressed from use by the state in its case-in-chief; the state did not appeal that decision.

However, the trial court went on to state:

> "It will be the further ruling of the Court they [the statements taken at Linn County Jail] will be admissible on rebuttal for impeachment if the defendant should take the stand and testify and in that testimony testify to the area or subject matter of the interview, and thus make those statements available for impeachment."

This ruling is the sole issue on appeal. Defendant argues that, under the Oregon Constitution, it was error for the trial court to refuse to extend suppression of the statements to include any potential impeachment use by the state. By his argument, he asks for a rule excluding *Miranda*-violative statements for *all* purposes, based on Article I, section 12, of the Oregon Constitution. Before we can reach the merits of defendant's argument, however, we must address a contention of the state on a procedural point.

■ The state argues that defendant failed to make a sufficient record for this court to review the ruling of the trial court. It relies on *State v. McClure,* 298 Or 336, 692 P2d 579 (1984). The Supreme Court there discussed how counsel can preserve evidentiary claims involving potential, but unrealized, impeachment evidence concerning a defendant. The court adopted the procedure enunciated in a federal case that held that the record is sufficiently protected in a case involving the admission of evidence for impeachment purposes if a defendant, through an offer of proof, "[e]stablish[es] on the record that he will in fact take the stand and testify * * * *and* * * * [s]ufficiently outline[s] the nature of his testimony." *State v. McClure, supra,* 298 Or at 341 (*citing United States v. Cook,* 608 F2d 1175, 1186 (9th Cir 1979), *cert den* 444 US 1034 (1980)). (Emphasis supplied.)

The impeachment evidence in *McClure* and in *Cook,* the federal case on which it relied, involved the use of prior convictions under OEC 609(1)(a) and its federal counterpart. OEC 609(1)(a) specifically requires a balancing test in a criminal case, under which the court decides the admissibility of a *prior conviction* by weighing the probative value of admitting evidence of the conviction against its prejudicial effect to the defendant should he testify.

The same cannot be said for *statements* of a defendant. The only requirements under OEC 613—the rule of evidence pertinent to this case—for the introduction of a prior inconsistent statement are that the defendant be "afforded an opportunity to explain or deny the same and [that] the opposite party is afforded an opportunity to interrogate the witness thereon." *See State v. Brown,* 299 Or 143, 150, 699 P2d 1122 (1985). As such, determining the admissibility of a defendant's prior inconsistent statement does not involve a balancing test as under OEC 609(1) and, therefore, the need does not exist for the record to reflect the factors discussed in *State v. McClure, supra,* in order to preserve the record for review. Because an inconsistent statement may only be introduced *if* a defendant chooses to testify and does so contrary to the prior statement and because, once it is introduced, the defendant can explain or deny the statement, the considerations expressed in *State v. McClure, supra,* do not apply to the facts of this case. It follows that even less of an offer of proof than that found adequate in *McClure* is sufficient here. Defendant's claim is preserved. We now address his argument on the merits.

■ Although we may interpret our own state constitution to provide greater protection to our citizens than United States Supreme Court interpretations of the federal constitution provide, *see Oregon v. Hass,* 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1973); *State v. Caraher,* 293 Or 741, 750, 653 P2d 942 (1982); *State v. Soriano,* 68 Or App 642, 684 P2d 1220, *adopted* 298 Or 392 (1984), steps to adopt a stricter standard should be taken cautiously and be supported by reasoned analysis and sound policy considerations. For example, the Oregon Supreme Court's rejection of the federal Fourth Amendment approach to search and seizure law in *State v. Caraher, supra,* occurred only after an exhaustive analysis had satisfied the court that the desired need for

clarification and uniformity in that area of the law was not being achieved by the federal courts and that, at least arguably, an adequate body of state law was available as a substitute source of precedent. *State v. Caraher, supra,* 293 Or at 749. Unlike the law of search and seizure, however, the law in Oregon on *Miranda*-violative statements and their use for impeachment purposes has been exclusively based in federal constitutional principles.

Defendant argues that we should adopt the rationale of *State v. Brewton,* 247 Or 241, 422 P2d 581, *cert den* 387 US 943 (1967), as the Oregon rule. In *Brewton,* the Oregon Supreme Court held that the failure of the police to warn the defendant of his Fifth and Sixth Amendment rights, which rendered his statements inadmissible in the state's case-in-chief, also precluded the use of the statements as impeachment evidence. We do not find *Brewton* to be a particularly useful precedent.

The court in *Brewton* attempted to decide the case consistently with the then recent case of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), and its own decision in *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965), the latter a case in which the court adopted the federal exclusionary rule analysis as "a necessary procedural device to implement the substantive rights written into the Fourth, Fifth and Sixth Amendments." *State v. Brewton, supra,* 247 Or at 244-45. The court's holding in *Brewton* was thought—and intended—to be consistent with the federal line of analysis. Four years later, however, the United States Supreme Court reached a contrary result in a case with similar facts.

In *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971), the Court specifically held that statements which would otherwise be inadmissible in a prosecution's case-in-chief under *Miranda* may be admitted for impeachment purposes as prior inconsistent statements to rebut a defendant's direct testimony. The court warned:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury * * *.

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk

of confrontation with prior inconsistent utterances." 401 US at 225. (Citations omtted.)

The court expressed its conviction that the impeachment process serves as a valuable safeguard against perjury and an important technique to assist the trier of fact in the assessment of a witness' credibility. This point was reemphasized by the court in its later decision in *Oregon v. Hass, supra.*

In *Hass,* as in *Harris,* the defendant's inculpatory statements had been ruled inadmissible by the trial court in the prosecution's case-in-chief. The trial court admitted the statements in rebuttal, however, to impeach the defendant's direct testimony. This court reversed, relying on *State v. Brewton, supra.*[3] The Oregon Supreme Court took review for the purpose of deciding whether to overrule *Brewton* but concluded:

> "[W]e now find that it is not necessary to make this determination in deciding this case because whether the reasoning of *Brewton* or of *Harris* is used, the opinion of the Court of Appeals must be affirmed." *State v. Haas,* 267 Or 489, 492, 517 P2d 671 (1973).

On certiorari, the United States Supreme Court, citing *Harris,* held the statements admissible for impeachment purposes. In reversing both this court and the Oregon Supreme Court, the Court stated:

> "[I]t does not follow from *Miranda* that evidence inadmissible against Hass in the prosecution's case in chief is barred for all purposes, always provided that 'the trustworthiness of the evidence satisfies legal standards.' Again, the impeaching material would provide valuable aid to the jury in assessing the defendant's credibility; again, 'the benefits of this process should not be lost' and, again, making the deterrent-effect assumption, there is sufficient deterrence when the evidence in question is made unavailable to the prosecution in its case in chief." 420 US at 722.

The *Harris/Hass* rule is clear and unambiguous: *Miranda*-violative statements ruled inadmissible in a prosecution's case-in-chief may be admissible for impeachment purposes to provide a safeguard against perjury and to assist the

---

[3] *State v. Haas,* 13 Or App 368, 510 P2d 852 (1973). Defendant's true last name is Hass, the spelling of which was adopted by the United States Supreme Court in *Oregon v. Hass, supra.*

trier of fact in assessing the witness' credibility[4] The rule's clarity and its underlying policy of deterring perjury strongly commend it.

Defendant points, however, to cases in three jurisdictions which have rejected the *Harris/Hass* rule under their applicable state constitutional provisions against self-incrimination, and argues that we should follow suit. *People v. Disbrow,* 16 Cal 3d 101, 127 Cal Rptr 360, 545 P2d 272 (1976) (Cal Const, Art I, § 15; juries cannot be relied on to limit use of impeaching material to impeachment, creating impermissible pressure on defendant not to exercise basic right to testify); *State v. Santiago,* 53 Haw 254, 492 P2d 657 (1971) (Hawaii Const, Art I, § 8; Hawaiian citizen "privileged to freely choose whether or not to incriminate himself," so constitution forbids even impeachment use); *Commonwealth v. Triplett,* 462 Pa 244, 341 A2d 62 (1975) (Pa Const, Art I, § 9; *Harris* rule imposes a "grisly Hobson's choice," either to forego testifying or face impeachment).

On the other hand, our research indicates that, in the 19-year period since *Harris v. New York, supra,* was decided, the overwhelming majority of states have either adopted or expressed approval of the rule in *Harris,*[5] *albeit* usually with-

---

[4] *See United States v. Havens,* 446 US 620, 100 S Ct 1912, 64 L Ed 2d 559 (1980) (reaffirming vitality of *Harris/Hass* rule).

[5] *See Roynica v. State,* 54 Ala App 436, 309 So 2d 475, 482 (1974), *cert den* 423 US 858 (1975) (no constitution cited; federal probably intended); *State v. Johnson,* 109 Ariz 70, 505 P2d 241 (1973) (no constitution cited; federal probably intended); *Rooks v. State,* 250 Ark 561, 466 SW2d 478 (1971) (no constitution cited; both apparently intended); *Jorgenson v. People,* 174 Colo 144, 482 P2d 962 (1971) (no constitution cited; federal probably intended); *State v. Nardini,* 187 Conn 513, 447 A2d 396 (1982) (no constitution cited; federal probably intended); *Williams v. State,* 301 A2d 88 (Del 1973) *(dictum); Nowlin v. State,* 346 So 2d 1020 (Fla 1977) (no constitution cited; both intended); *Campbell v. State,* 231 Ga 69, 200 SE2d 690 (1973) (reaffirmed in *Manbeck v. State,* 165 Ga App 625, 302 SE2d 361 (1983)) (no constitution cited; federal probably intended); *State v. Moulds,* 105 Id 880, 673 P2d 1074 (1983) *(dictum;* federal intended); *People v. Sturgis,* 58 Ill 2d 211, 317 NE2d 545 (1974), *cert den* 420 US 936 (1975) (both intended); *Johnson v. State,* 258 Ind 683, 284 NE2d 517, 288 NE2d 553 (1972) (no constitution cited; federal apparently intended); *State v. Martin,* 217 NW2d 536 (Iowa 1974) *(dictum;* federal probably intended); *State v. Osbey,* 213 Kan 564, 517 P2d 141 (1974) (partially disapproved and limited in *State v. Roberts,* 223 Kan 49, 574 P2d 164 (1977)) (no constitution cited; both probably intended); *Murphy v. Commonwealth,* 652 SW2d 69 (Ky 1983) *(dictum;* federal probably intended), *cert den* US(1984); *State v. McCarty,* 421 So 2d 213 (La 1982) (no constitution cited; federal intended); *State v. Gervais,* 317 A2d 796 (Me 1974) *(dictum); Hall v. State,* 292 Md 683, 441 A2d 708 (1982) (federal constitution); *Commonwealth v. Harris,* 364 Mass 236, 303 NE2d 115 (1973) (both constitutions); *People v. Graham,* 386 Mich 452, 192 NW2d 255 (1971) *(dictum;* federal constitution); *State v. Gabler,* 294 Minn 457,

out separate consideration of their own constitutions, with only California, Hawaii and Pennsylvania rejecting the rule on the basis of their respective constitutional provisions.[6] Even Pennsylvania has since significantly narrowed its holding in *Commonwealth v. Triplett, supra,* now allowing the use of a suppressed statement for impeachment purposes if a defendant chooses to testify and his testimony relates to the existence and substance of such a statement. *Commonwealth v. Anderson,* 302 Pa Super 457, 460, 448 A2d 1131 (1982);[7] *Commonwealth v. Mobley,* 267 Pa Super 29, 405 A2d 1287 (1979).

---

199 NW2d 439 (1972) (federal constitution); *Sanders v. State,* 260 So 2d 466 (Miss 1972) (no constitution cited; both probably intended); *State v. Cartwright,* 650 P2d 758 (Mont 1982) (no constitution cited; both probably intended); *State v. Bazis,* 190 Neb 586, 210 NW2d 919 (1973), *cert den* 415 US 933 (1974) (no constitution cited; federal intended); *Johnson v. State,* 92 Nev 405, 551 P2d 241 (1976) (no constitution cited; federal intended); *Stone v. Shea,* 113 NH 174, 304 A2d 647 (1973) (no constitution cited; federal intended); *State v. Miller,* 67 NJ 229, 337 A2d 36 (1975) (both constitutions); *State v. Trujillo,* 93 NM 724, 605 P2d 232 (1980) (*dictum;* no constitution cited; federal probably intended); *People v. Wise,* 46 NY2d 321, 413 NYS2d 334, 385 NE2d 1262 (1978), *aff'd* 82 App Div 2d 869, 440 NYS2d 266 (1981) (no constitution cited; both probably intended); *State v. Evans,* 17 NC App 561, 195 SE2d 102 (1973) (no constitution cited; federal intended); *State v. Iverson,* 187 NW2d 1 (ND), *cert den* 404 US 956 (1971) (both constitutions); *State v. Kassow,* 28 Ohio St 2d 141, 277 NE2d 435 (1971), *vacated in part* 408 US 939, 92 S Ct 2876, 33 L Ed 2d 762 (1972) (federal constitution); *Criss v. State,* 507 P2d 935 (Okla Crim 1973) (no constitution cited; federal probably intended); *State v. D'Alo,* 435 A2d 317 (RI 1981) (*dictum;* federal constitution); *State v. Mercado,* 263 SC 304, 210 SE2d 459 (1974) (*dictum;* federal constitution); *State v. Williamson,* 349 NW2d 645 (SD 1984) (federal constitution); *Brewer v. State,* 501 SW2d 280 (Tenn 1973) (*dictum;* probably both constitutions); *Girndt v. State,* 623 SW2d 930 (Tex Crim 1981) (limited in *Alfaro v. State,* 638 SW2d 891 (Tex Crim 1982)) (*dictum;* no constitution cited; federal probably intended); *State v. Kish,* 28 Utah 2d 430, 503 P2d 1208 (1972) (no constitution cited; federal probably intended); *Santmier v. Commonwealth,* 217 Va 318, 228 SE2d 681 (1976) (*dictum;* no constitution cited; federal probably intended); *State v. Kilborn,* 143 Vt 360, 466 A2d 1175 (1983) (*dictum;* no constitution cited; federal probably intended); *Riddell v. Rhay,* 79 Wash 2d 248, 484 P2d 907, *cert den* 404 US 974 (1971) (no constitution cited; federal intended); *State v. Burgess,* 329 SE2d 856 (W Va 1985) (*dictum;* no constitution cited; federal intended); *Ameen v. State,* 51 Wis 2d 175, 186 NW2d 206 (1971) (no constitution cited; federal intended).

[6] Alaska has not flatly rejected the rationale of *Harris v. New York, supra,* and allows the use of illegally obtained statements under *Miranda* in a prosecution for perjury under Alaska Rule of Evidence 412. This rule has been termed "clearly consistent with federal law" under *Harris. See Wortham v. State,* 657 P2d 856, 858 n 1 (Alaska App), *aff'd* 666 P2d 1042 (Alaska 1983) (Singleton, J., concurring).

[7] The dearth of jurisdictions rejecting *Harris* was aptly noted by one of the dissenting judges on the California court.

"One may seriously and fairly question the strength of a juridical light that is discerned by so few and invisible to so many." *People v. Disbrow, supra,* 127 Cal Rptr at 378. (Richardson, J., dissenting.)

The dissent takes up defendant's cudgel by arguing (76 Or App at 314),

> "The *Harris* rule deters a defendant who has been the subject of illegal police conduct from testifying in his own defense. It undermines a defendant's right under Article I, section 11, of the Oregon Constitution to testify in his own behalf."

What the dissent is really saying—but does not seem to recognize—is,

> "[The rule we announce today] undermines a defendant's right under Article I, section 11, of the Oregon Constitution [to lie under oath with impunity]."

It would be nice to think that to state such a proposition is to refute it, but that obviously is not the case. We shall be more concrete:

We reject the dissent's view because we believe it is a perversion of an Oregon constitutional right to turn a shield (the right to keep the state from using illegally obtained evidence) into a sword (the right to take affirmative advantage of the unavailability of that evidence to work a fraud on the trier of fact). One of the functions of the exclusionary rule is to preserve the integrity of our judicial system by refusing admission to evidence that was obtained in violation of the document that created the judicial system—the constitution. But a court system that countenances perjury also loses its integrity—there can be no respect for law when a court is not even free to insist that witnesses appearing before it obey the oath they take to tell the truth. The proper balance of these twin challenges to the integrity of our judicial system is, we think, to permit a defendant to keep illegally obtained evidence from a jury unless he takes the stand—something he cannot be compelled to do—and, by his testimony, makes that evidence pertinent to determining whether he is telling the truth. This is a very limited rule: The evidence against defendant is not made *generally* admissible if he testifies; it is admissible only and to the extent it impeaches a statement he had made under oath at trial. He is still free to testify as to other matters, and many defendants may choose to do so. But he is not free to take the oath with his fingers crossed.

A defendant's right to testify does not exist in a vacuum independent from the truth-seeking purpose of our

judicial process, a process in which the technique of impeachment plays a vital role. To eliminate one of the impeachment process' more valuable tools—the use of prior inconsistent statements that are otherwise reliable—simply licenses perjury. This we will not do. We accordingly reject defendant's argument for an independent rule under Article I, section 12, of the Oregon Constitution. Assuming, without deciding, that the *Miranda* rule applies under the Oregon Constitution, we adopt the rule of *Harris v. New York, supra.*

Affirmed.

**NEWMAN, J.,** dissenting.

The majority interprets Article I, section 12, of the Oregon Constitution to permit the state to impeach defendant on cross-examination with statements that the police obtained from him in a custodial interrogation after he had received *Miranda* warnings and after he had requested counsel but had not initiated further discussion.[1] Neither this court nor the Supreme Court has addressed this issue before under the Oregon Constitution. Because I believe that the majority has forsaken sound analysis and adopted a rule that is both undesirable and at odds with Oregon precedent, I dissent.

■ In determining the meaning of Article 1, section 12, we have stated, in words which the Oregon Supreme Court has adopted as its own, that

> "a United States Supreme Court majority is no more binding * * * than a U.S. Supreme Court minority, a decision of the Supreme Courts of Hawaii, California, or Georgia, or a well-reasoned law review article. Judicial opinions from other jurisdictions are helpful in interpreting the Oregon Constitution to the extent that their reasoning is persuasive * * *." *State v. Soriano,* 68 Or App 642, 645-46, 684 P2d 1220, *aff'd* 298 Or 392 (1984).

Nevertheless, the majority interprets Article 1, section 12, in conformity with the United States Supreme Court opinions in

---

[1] Like the majority, I take it as clear that Article I, section 12, requires the police to give *Miranda* warnings to suspects in custody. *See State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983); *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983); *see also State v. Smith,* 70 Or App 675, 691 P2d 484 (1984), *rev allowed* 298 Or 704 (1985). I also agree with the majority's implicit assumption that, under the Oregon Constitution, the police must cease questioning a suspect who requests an attorney during custodial interrogation unless the suspect thereafter initiates the questioning.

*Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971), and *Oregon v. Hass,* 420 US 714, 95 S Ct 1215, 43 L Ed 2d 570, (1975), that interpreted the Fifth Amendment. In *Harris,* the Supreme Court held that under the Fifth Amendment the state could impeach the defendant on cross-examination with statements which he made to the police during custodial interrogation after the police had failed to give correct *Miranda* warnings. In *Oregon v. Hass* the Supreme Court reversed the Oregon Supreme Court and held, under the Fifth Amendment, that the state could impeach the defendant on cross-examination with statements he made to the police during custodial interrogation after the police had given *Miranda* warnings to him *and* he had requested an attorney.

We should not adopt the *Harris* rule or the rule of *Oregon v. Hass* in interpreting our own constitution. Even if, in an appropriate case, we were to adopt the *Harris* rule, we should not adopt the rule of *Oregon v. Hass.*

■ Although the case before us is like *Hass,* the majority opinion focuses its discussion on *Harris,* which was decided 5 to 4. The reasoning of the dissenting opinion is persuasive. In dissent, Justice Brennan pointed out that the *Harris* rule was contrary to *Miranda,* which stated:

> " 'The privilege against self-incrimination protects the individual from being compelled to incriminate himself in *any* manner . . . . [S]tatements merely intended to be exculpatory by the defendant are often *used to impeach his testimony at trial* . . . . *These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.'* 384 US, at 476-477, 16 L Ed 2d at 724, 725, 10 ALR 3d 974 (emphasis added)." 401 US 222 at 230.

Justice Brennan noted:

> "The objective of deterring improper police conduct is only part of the larger objective of safeguarding the integrity of our adversary system. The 'essential mainstay' of that system, Miranda v. Arizona, * * * is the privilege against self-incrimination, which for that reason has occupied a central place in our jurisprudence since before the Nation's birth. * * *. The Court today tells the police that they may freely interrogate an accused incommunicado and without counsel and know that although any statement they obtain in violation of Miranda cannot be used on the State's direct case, it

may be introduced if the defendant has the temerity to testify in his own defense. This goes far toward undoing much of the progress made in conforming police methods to the Constitution." 401 US 222 at 231.

Here the majority argues that to deny the state the opportunity to impeach defendant with his previous statements "simply licenses perjury." 76 Or App at 311. *Any* exclusionary rule, however, bars the prosecution from using evidence to convict a defendant whose testimony at trial may be false. A rule excluding illegally obtained evidence for all purposes does *not* condone perjury but protects the integrity of the criminal justice system and deters police misconduct. To allow the state to use statements obtained illegally, however, *does* condone the illegal practices by which those statements were obtained. As the Oregon Supreme Court stated in *State v. Brewton,* 247 Or 241, 246, 422 P2d 581 (1967):

"The state should be free to impeach, but it ought to come by its impeachment as legally as it accumulates its other evidence."

The majority adopts the United States Supreme Court's assumption in *Harris* that "sufficient deterrence [to police misconduct] flows when the evidence in question is made unavailable to the prosecution in its case in chief." 401 US at 225. In *Brewton,* our Supreme Court expressly rejected this argument:

"If we should today adopt a restrictive application of the exclusionary rule, the result could be a major step backward. This court would in effect be saying to the overzealous that police officers will be free in the future to interrogate suspects secretly, at arms length, without counsel, and without advice, so long as they use means consistent with threat-or-promise voluntariness, and so long as they understand that they may file the information only for use to keep the defendant honest. Thus the police could, at their option, take a calculated risk: By giving up the possibility of using the suspect's statements in the state's case, they could obtain by unconstitutional means and store away evidence to use if the defendant should elect upon trial to take the stand. As commendable as it may be to prevent perjury, the price of such prevention could be to keep defendants off the stand entirely. In some cases, the temptation to silence a suspect of dubious probity might very well outweigh the desire to conduct a constitutionally valid interrogation. We have concluded that to introduce such a

rule could undo much of the recent progress that has been made in upgrading police methods to preserve the rights guaranteed under the Fifth and Sixth Amendments, and *would be inconsistent with the trend of our recent decisions."* *State v. Brewton,* 247 Or 241, 245. (Emphasis supplied.)

The majority speaks of the "clarity" of the *Harris* rule, but a virtue of the *Harris* rule is certainly *not* clarity. If a statement is inadmissible in the state's case-in-chief, it is only admissible under *Harris* for impeachment if it was made voluntarily. *Harris* forces courts to grapple again with the murky question of voluntariness.[2] Furthermore, a trial court would have to determine in each case whether the illegally obtained statement is probative on the issue of credibility and then instruct the jury to do the impossible, that is to ignore the statement for other purposes.[3]

The *Harris* rule deters a defendant who has been the subject of illegal police conduct from testifying in his own defense. It undermines a defendant's right under Article 1, section 11, of the Oregon Constitution to testify in his own behalf. As the Oregon Supreme Court has said: "If the choice is to exclude all illegally obtained evidence or to silence the defendant as a witness, it is better to exclude the illegal evidence." *State v. Brewton, supra,* 247 Or at 246.

Finally, with particular reference to the rule of *Oregon v. Hass,* to allow the police to continue custodial interrogation after the defendant has requested an attorney and has not initiated the interrogation belittles the constitutional right to counsel's assistance.

■ The majority mistakenly declares that *Brewton* is not a "particularly useful precedent," (76 Or App at 306)

---

[2]The issue is not before us whether defendant's statements were voluntary. *See State v. Foster,* 288 Or 649, 607 P2d 173 (1980). The question of whether the trial court must make explicit findings of voluntariness before allowing impeachment under these circumstances is also not raised.

[3]

"To instruct a jury that they are not to consider expressions of complicity in the charged crime as evidence that the speaker in fact committed the charged crime, but only for the purpose of demonstrating that he was probably lying when he denied committing the charged crime, would be to require, in the words of Learned Hand, 'a mental gymnastic which is beyond, not only [the jury's] power, but anybody else's.' (Nash v. United States (2d Cir 1932) 54 F 2d 1006, 1007)." *People v. Disbrow,* 16 Cal 3d 101, 112, 545 P2d 272 (1976).

because it does not explicitly rely on the Oregon Constitution. Although *Brewton* attempted to announce standards under the Fifth Amendment, that case is a clear statement of what our supreme court believed would be an appropriate rule for Oregon.[4] Its reasoning shows why we should adopt an independent interpretation of Article 1, section 12, and reject *Harris* and *Oregon v. Hass.*

In *Brewton,* the Oregon Supreme Court held that the state may not impeach a defendant at trial, should he choose to testify, with incriminating statements that he gave to the police during custodial interrogation if the police fail to give him *Miranda* warnings. It rejected the rule that the United States Supreme Court subsequently adopted in *Harris.* The Oregon Supreme Court stated:

> "While an argument can be made that 'voluntary' unconstitutional confessions can be distinguished from 'involuntary' unconstitutional confessions, solely for the purposes of impeachment, this dichotomy does not appeal *to us* as constitutionally meaningful." *State v. Brewton,* 247 Or at 243. (Emphasis supplied.)

The court in *Brewton* rested its decision on Oregon precedents. Oregon law then and now requires exclusion of illegally obtained evidence for both substantive and impeachment purposes. In *State of Oregon v. Goodwin,* 207 Or 642, 645, 298 P2d 1024 (1956), the court had stated:

> "To hold that a statement, which is in fact inadmissible as a confession, is, nevertheless, admissible as a contradictory

---

[4]As the majority knows, the constitutional basis for decisions at the time of *Brewton* was often blurred. *State v. Flores,* 68 Or App 617, 622-623, 685 P2d 999, *rev den* 298 Or 151 (1984). In fact, it appears that our Supreme Court may have operated under the misconception that it could independently interpret the United States Constitution to provide broader protection for Oregon citizens than the interpretations of the United States Supreme Court provided. *See State v. Florance,* 270 Or 169, 182 527 P2d 1202 (1974). Although the *Brewton* court may have attempted to enunciate a standard under the federal constitution, it, nevertheless, also attempted to arrive at what it thought to be a sound rule of law for Oregon. Under similar circumstances, both this court and the Oregon Supreme Court have recognized an opinion's precedential value in determining the meaning of the provisions of the Oregon constitution. *See State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968), cited as state precedent in *State v. Caraher,* 293 Or 741, 757, 653 P2d 942 (1982) and *State v. Lowry,* 295 Or 337, 345, 667 P2d 996 (1983); *see also State v. Cloman,* 254 Or 1 456 P2d 67 (1969) cited in *State v. Caraher,* 293 Or at 759; *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968) cited in *State v. Soriano, supra,* 68 Or App at 660.

statement effectively circumvents the rules governing confessions. It permits evidence to come in through the back door which would be excluded if it attempted to enter at any other place. Rather than create an effective by-pass for the exclusionary rule, the rule itself should be abandoned."

The *Brewton* decision relied on *Goodwin*:

"As we have said before, circumvention of constitutional liberties is not to be encouraged by permitting illegally obtained evidence to come in 'through the back door.' *State of Oregon v. Goodwin* * * *." *State v. Brewton* 247 Or at 246.

The majority holds that *Brewton* was displaced by *Harris.* Our Supreme Court, however, has resisted just such a step. In *State v. Haas,* 267 Or 489, 517 P2d 671 (1973), which was decided after *Harris,* the court was asked to overrule *Brewton* on facts analogous to the facts of this case. It chose not to do so.[5]

■ Even if we were to adopt the *Harris* rule for Article 1 section 12, we should not adopt the rule of *Oregon v. Hass.* The facts here are like those in *Hass.* Defendant requested counsel during custodial interrogation, but the police continued to question him, although defendant had not initiated further interrogation. The state used his subsequent statements to impeach him when he testified at trial on his own behalf. Unlike the situation in *Harris,* when the defendant was not given correct *Miranda* warnings, may not have felt the need for counsel and did not request counsel's assistance at custodial interrogation, defendant recognized that he needed the assistance of counsel and attempted to exercise that constitutional right of which the police had advised him. A defendant who requests counsel at custodial interrogation is entitled to that assistance, and the police should not be allowed to frustrate that right by questioning him between the time he makes the request and the time he receives that assistance.

Furthermore, the argument that the police will be

---

[5]In this court's opinion in *State v. Haas,* we had also followed *Brewton* and said:

"In [Brewton] the Oregon Supreme Court held such evidence was not admissible for impeachment purposes. We are bound by the decision of our own Supreme Court in this area." *State v. Haas,* 13 Or App 368, 374, 510 P2d 852 (1973).

sufficiently deterred from violating the rights of an accused by the threat of losing evidence for their case-in-chief is much less convincing when applied to the facts of *Hass* and the case before us than to the facts of *Harris.* In *Harris,* the police misconduct was failure to give a defendant *Miranda* warnings before interrogation. Here, however, as in *Hass,* the police conduct was failure to cease questioning when defendant requested an attorney during custodial interrogation. *See Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *State v. Barmon,* 67 Or App 369, 679 P2d 888, *rev den,* 297 Or 227 (1984). In *State v. Haas,* the *Oregon* Supreme Court found that the argument of adequate deterrence of the United States Supreme Court in *Harris* was not convincing when the defendant has requested the assistance of counsel:

> "The defendant here was given proper warnings and took them at their word and asked for a lawyer. The police then knew they would most likely get nothing further from defendant if he consulted a lawyer. Therefore, they had nothing to lose and something to gain by violating *Miranda* if the State is permitted to use such information as was secured by continued interrogation for impeachment purposes. In such a situation, there is no pressure whatsoever to obtain compliance and the prophylactic exclusion of the evidence as dictated by *Miranda, Escobedo,* and *Neely* is still required." *State v. Haas, supra,* 267 Or at 493. (Footnotes omitted).

■ The majority states that *Harris* has been overwhelmingly persuasive in the courts of our sister states. Although the majority cites 45 cases in its support (76 Or App at 308-309), its assertion does not withstand close scrutiny. The majority concedes that 35 of those 45 cases did not even consider a state constitutional provision and were decided solely on federal grounds. It is not surprising that *Harris* would be persuasive to state courts attempting to apply federal law. Here, however, we must decide what is the best rule of law under our state constitution. Of the 10 cases in which the majority claims courts adopted *Harris* as a construction of their state constitutions, six of them did not even mention their own constitutions and only two devote any more than a passing reference to them. *Rooks v. State,* 250 Ark 561, 466 SW 2d 478 (1971) (court misreads *Harris* to allow use of *involuntary statements* to impeach which restores vitality to its previous decisions); *Commonwealth v. Harris,* 364 Mass 236, 303 NE 2d 115 (1973) (because of technical nature of

*Miranda* violation, court stated that "case would be a peculiarly unattractive vehicle for ruling contrary to *Harris v. New York*"). In neither of those cases does the court give any serious consideration to the merits or demerits of the *Harris* rule. Furthermore, three of the ten cases deal with the issue only in *dicta. State v. Roberts,* 223 Kan 49, 574 P2d 164 (1977) (conviction *reversed,* because statement used for impeachment was involuntary); *Brewer v. State,* 501 SW 2d 280 (Tenn 1973) (conviction *reversed,* because statement used for impeachment was not directly contradictory); *State v. Iverson,* 187 NW 2d 1 (ND), *cert den* 404 US 956 (1971) (conviction affirmed, because defendant not in custody at the time statements used for impeachment given). To summarize, the flood of state court decisions that follow *Harris* is really just a trickle. Furthermore, there is virtually *no* support in those cases for adopting the rule of *Oregon v. Hass* as an independent interpretation of our state constitution.

On the other hand, California, Hawaii, and Pennsylvania, after carefully considering the merits of the federal rule, have chosen *not.*to follow *Harris* in interpreting their own constitutions. *People v. Disbrow, supra,* (specifically rejecting the rule of *Oregon v. Hass*); *State v. Santiago,* 53 Haw 254, 492 P2d 657 (1971); *Commonwealth v. Triplett,* 462 Pa 244, 341 A2d 62 (1975).

■ The rule of *Oregon v. Hass* undervalues the importance of the assistance of counsel if the police may continue with custodial interrogation after a suspect requests counsel. It deters a defendant from testifying in his own defense. It reopens the issue of "voluntariness." It requires the jury to do mental gymnastics—to consider defendant's pretrial statements only for impeachment purposes and not as substantive evidence. It does not deter the police from engaging in illegal conduct; it encourages it and, thereby, weakens the integrity of the judicial system.

We should not adopt the rule of *Oregon v. Hass* in making an independent interpretation of Article 1, section 12. Rather we should hold that the state may not impeach defendant with a statement which the police obtained from him during custodial interrogation after he had requested counsel and during a time when interrogation should have ceased. We should reverse.

Buttler and Warden, JJ., join in this dissenting opinion.