Argued and submitted March 4, affirmed November 23, 1988

## LANDSING PROPERTY CORPORATION,
*Appellant,*

*v.*

## CITY OF PORTLAND FIRE CODE
## BOARD OF APPEALS,
*Respondent.*

(A8702-00890; CA A45276)

764 P2d 616

Allan M. Muir, Portland, argued the cause for appellant. With him on the briefs were Eugene L. Grant, and Schwabe, Williamson & Wyatt, Portland.

Thomas R. Williams, Senior Deputy City Attorney, Portland, filed the brief and argued the cause for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Petitioner appeals a judgment on a writ of review, affirming the City of Portland Fire Code Board of Appeal's (Board) order that the Portland Medical Center (Center), owned by petitioner, be equipped with a sprinkler system throughout the entire building within 10 years. We affirm.

Our scope of review in a writ of review is the same as the circuit court's review of a lower tribunal's action. ORS 34.100; *Caffey v. Lane County,* 75 Or App 399, 401, 706 P2d 590 (1985). Under ORS 34.040, the circuit court must review the actions of the Board and reverse them if the Board:

"(1) Exceeded its jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it;

"(3) Made a finding or order not supported by substantial evidence in the whole record;

"(4) Improperly construed the applicable law; or

"(5) Rendered a decision that is unconstitutional."

The Center is a 14 story downtown building, over 75 feet in height, that was built in 1929. It includes a restaurant and retail space on the first floor, a hospital on the second and third floors, and office space on the fourth through thirteenth floors. The fourteenth floor is a penthouse. There are two stairways on the second and third floors, but the remaining floors have only one central stairway. The building has a maximum capacity of 400 people.

On May 21, 1979, the building's former owner agreed to make certain changes in the building that would improve building safety, and the city agreed that, with those changes, the building satisfied applicable city fire safety regulations, FM 68.[1] Subsequently, the owner made several alterations to the building that had not been agreed on. Before these alterations were made, the building had looped corridors on each floor which provided uninterrupted access to all parts of each

---

[1] Pursuant to ORS 476.030(4), the City of Portland is exempt from the statutes, rules and regulations administered by the State Fire Marshal. However, the Portland City Council adopted the State Fire Marshal's administrative rules, which included FM 68.

floor and to a single central stairway. As a result of the alterations, the looped corridor is now blocked on several of the floors and, consequently, there is no direct access to the stairs from the corridor. In some instances, access to the stairs is available only through one or more rooms. Additionally, tenants have made other alterations which are not consistent with the building design.

In 1985, the owner began some additional remodeling which required the State Fire Marshal again to inspect the building. At that time, the Marshal observed the alterations that had been made since the 1979 agreement. He concluded that these changes compromised the existing sprinkler system, which was primarily located in the exitway and was approved in the 1979 agreement. Additionally, he identified numerous deficiencies in the exitway system. Based on these findings, he concluded that the building constituted a "high life hazard"[2] under the city's fire code, FM 41,[3] and that the installation of a sprinkler system throughout the entire building was warranted.

Petitioner contested the Marshal's findings and submitted an alternative plan to remedy the deficiencies in the building. The proposal did not require the installation of a sprinkler system throughout the building, but required that a sprinkler system be installed on the three floors that had been remodeled, in addition to the basement, the first floor and the two hospital floors. The Marshal reviewed this proposal and, in September, 1986, rejected it, finding that it did not sufficiently remedy the deficiencies and provide for a reasonably adequate level of exiting safety. Petitioner appealed the Marshal's decision to the Board. The Board affirmed the Marshal and held that petitioner must install a complete sprinkler system throughout the entire building within ten years.

Petitioner first contends that the Marshal[4]

---

[2] A high life hazard is defined as "any condition, or combination of conditions, where a reasonably adequate level of exiting safety has not been provided for the building occupants in the event of fire or fire-related emergency." OAR 837-41-050(1).

[3] In 1981, Fire Code FM 41 replaced *former* Fire Code FM 68. FM 41 is a codification of OAR 837-41-050.

[4] Although petitioner appeals from the Board's decision, the Board's decision affirms and is based on the Marshal's decision, so we will refer to the Marshal throughout the opinion.

misconstrued the law and acted outside his scope of authority in requiring the installation of a complete sprinkler system pursuant to FM 41. Petitioner argues that the requirement that it install such a system is not authorized by FM 41. We conclude that the Marshal's decision to impose this requirement was within his authority.

■ Under FM 41, a building which constitutes a high life hazard to the occupants in the event of a fire or a fire-related emergency

> "shall be improved to provide a reasonably adequate level of exiting safety through substantial compliance with the requirements for new construction under the *Oregon State Structural Specialty Code and Fire & Life Safety Code,* or any of the following methods or combinations thereof which the State Fire Marshal or deputy approves for the building or structure." OAR 837-41-050(2). (Emphasis supplied.)

Petitioner argues that the Marshal could not rely on the provisions of the Oregon State Structural Speciality Code and Fire & Life Safety Code (UBC) to impose the sprinkler requirement.[5] However, FM 41 clearly provides that substantial compliance with the UBC is an available means to provide a reasonably adequate level of exiting safety. For a building of the Center's type, height and occupancy, section 1807 and section 701 of the UBC require either that an approved automatic sprinkler system be installed throughout the building or that there be compartmentation in the building.[6] Accordingly, there was authority for the Marshal to impose this requirement.[7]

■ Petitioner also contends that, even assuming that the Fire Marshal could rely on the UBC, FM 41 requires only

[5] The city adopted the Oregon State Structural Specialty Code and Fire Life Safety Code in City Code § 24.10.040.

[6] Petitioner contends that respondent waived any right to rely on the Oregon State Structural Specialty Code and Fire Life Safety Code (UBC) by not relying on it below. In light of the fact that the UBC is incorporated in FM 41 and that, in 1985, respondent specifically informed petitioner of the code's applicability, we do not find that argument persuasive.

[7] Petitioner also asserts that FM 41 only authorizes improvements to remedy hazards to lives, not property, and that the Marshal ordered the complete sprinkler system in this case to protect property. However, there was no evidence to support the conclusion that the Marshal ordered the complete sprinkler system in order to protect property, rather than lives.

"substantial compliance" with it. OAR 837-41-050(2). Petitioner asserts that a complete sprinkler system was not required in order to "substantially comply" with the UBC, and that the proposals submitted by its engineer were sufficient to satisfy that standard. Petitioner may be correct that its proposal would substantially comply with the UBC and would insure a reasonably adequate level of exiting safety. However, the question before us is not whether the Marshal and Board made the best decision possible from the perspective of all parties, but whether the decision was within their authority. Under FM 41, the Marshal must use his own best judgment and has considerable discretion in determining the appropriate action in a particular case[8] so long as the proposed plan provides a reasonably adequate level of exiting safety. OAR 837-41-050(8)(d). We conclude that the Marshal's decision in this case was within his discretion.

■ Petitioner also argues that the Marshal did not consider the unique characteristics of the building or the costs of installing a complete sprinkler system as required by FM 41 but, instead, mechanically applied the UBC requirement that a building of the Center's type and size be equipped with a sprinkler system throughout the entire building. The testimony of both the Marshal and the fire inspector, as well as correspondence from the Marshal, indicates that he did consider the unique characteristics of the building. Petitioner is correct that the Marshal is required by the city's regulations to consider the cost of improvements.[9] In correspondence to petitioner, the Marshal indicated his willingness to consider those

---

[8] OAR 837-41-050(8)(b) provides:

"Rather than looking strictly to the current standard for new construction under the building code, fire officials must use *their own best judgment* on a case-by-case basis as to reasonableness of the degree of hazard and adequacy of exit safety after evaluating all of the relevant factors stated in the rule and any other factors unique to the building or structure. The written findings required by the rule should list and analyze the relevant factors so that if the determination of the fire official is appealed, a written record of the reasons for the determination will be available for review." (Emphasis supplied.)

[9] OAR 837-41-050(8)(c) provides:

"While fire and life safety must be given primary consideration, the determination of whether the existing level of hazard is unreasonable requires the fire official to consider the cost of the possible improvements in relation to the benefits provided by increased exiting safety from such improvements. The cost benefit analysis should be considered in deciding which methods of improvement to approve once the determination of high life hazard has been made."

costs. However, there was no evidence in the record that petitioner provided the Marshal with information on the costs of either the Marshal's ordered improvement or their own proposal. Additionally, petitioner did not offer evidence of costs at the hearing.

■ Finally, petitioner argues that the Board erred in not holding that the Marshal is bound by the 1979 agreement and that no further improvements were required. Petitioner contends that the Marshal cannot now require a complete sprinkler system in the Center pursuant to FM 41, because it was agreed in 1979 that petitioner satisfied the requirements of FM 68, which is no more restrictive than FM 41. Assuming that a public entity could be limited by contract in the exercise of its responsibility for fire safety, petitioner's argument presumes that no alterations have been made to the building since the agreement. In this case, several changes have been made to the Center since the agreement, the most significant of which are the blocking of corridors on several of the floors and the tenant alterations. The alterations were significant enough to abrogate petitioner's agreement with respondent and to allow the Marshal to reevaluate the fire safety of the building.

Affirmed.