Argued and submitted May 4, the decision of the Court of Appeals and order of the
superintendent affirmed August 29, 1989

RONALD SNOW,
*Petitioner on Review,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent on Review.*

(AS-22; CA A46173; SC S36007)

780 P2d 215

Steven H. Gorham, Salem, argued the cause and submitted the petition for petitioner on review.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In *State v. Brown,* 297 Or 404, 445, 687 P2d 751 (1984), we held that upon proper objection polygraph evidence shall not be admissible in any trial or proceeding subject to the rules of evidence under the Oregon Evidence Code (OEC). In *State v. Lyon,* 304 Or 221, 233-34, 744 P2d 231 (1987), we held that polygraph evidence shall not be admissible in such trials or proceedings even if stipulated to by the parties.

We allowed review in this prison administrative segregation case to determine whether *Brown* and *Lyon* require exclusion of polygraph evidence in Department of Corrections (Department) proceedings. We hold that polygraph evidence was admissible in the present hearing because petitioner requested the polygraph examination and did not object to consideration of the results at the hearing. Furthermore, the Department's statutes and rules authorized the consideration of the evidence.

Petitioner is an inmate at the Oregon State Penitentiary (OSP). On August 5, 1987, OSP's security manager, on behalf of the Superintendent, recommended to Department's Director that petitioner be placed in administrative segregation for two years, as an escape-prone inmate, because he was a continuing and immediate threat to the safety and security of the institution and that segregation would prevent him from attempting to escape. *See* OAR 291-46-005.[1] Petitioner

---

[1] OAR 291-46-005 provides in part:

"(2) Purpose: The purpose of this rule is to provide a method to administratively segregate inmates who:

"(a) Constitute a continuing and/or immediate threat to the safety and security of the institution; or

"(b) Require protective custody.

"(3) Policy: As authorized by ORS 179.040(2), which empowers divisions to 'perform all legal and peaceful acts requisite and necessary for the successful management and maintenance of the institutions within its jurisdiction,' and ORS 421.105(1) and (2), which provide that the superintendents may enforce obedience to the rules for government of the inmates in the institutions by appropriate punishment it is the policy of the Oregon Department of Corrections to place those inmates in administrative segregation status, following the procedures outlined in this rule, who:

"(a) Are active, extreme escape risks; or

"(b) Jeopardize by their actions or threats the safety and/or security of the institution, staff, visitors, or other inmates."

was immediately segregated pending a hearing.

At the initial hearing on August 7, petitioner requested a polygraph examination. The hearing was continued for that purpose and to obtain additional information. A polygraph examination was conducted by an Oregon State Police detective who is a licensed polygraph examiner. When the hearing reconvened on September 16, the hearings officer received the polygraph evidence without objection by petitioner. Thereafter, the hearings officer concluded that the evidence in the record supported the Superintendent's recommendation of administrative segregation, and he recommended approval by the Director, who subsequently did approve segregation. On judicial review, ORS 421.195, the Court of Appeals affirmed. *Snow v. OSP,* 94 Or App 497, 766 P2d 1038 (1988).[2]

The issues are whether the hearings officer properly considered the polygraph evidence in reaching his conclusion and, if so, whether substantial evidence supports the hearings officer's recommendation.[3] Because the hearings officer did not affirmatively disavow consideration of the polygraph evidence, we will presume that he considered it in making his recommendation.

Petitioner argues that the rationale underlying the exclusion of polygraph evidence in *State v. Brown, supra,* and

---

[2] On appeal, and in spite of his earlier request for a polygraph examination, petitioner argued that admission and use of the polygraph evidence was prejudicial error. The Court of Appeals did not directly address that argument, instead including it among the arguments the court found to be "without merit." *Snow v. OSP,* 94 Or App 497, 499, 766 P2d 1038 (1988). In earlier cases, however, the Court of Appeals has expressly upheld the use of polygraph evidence in prison disciplinary hearings. *See Nelson v. OSCI,* 89 Or App 671, 750 P2d 184, *aff'd by an equally divided court* 307 Or 243 (1988) (evidence of credibility); *Branton v. OSP,* 89 Or App 597, 750 P2d 183 (1988), *aff'd by an equally divided court* 307 Or 244 (1988) (polygraph results admissible); *Parker v. OSCI,* 87 Or App 354, 742 P2d 617 (1987) (to impeach but not as affirmative evidence that petitioner acted as charged); *Wiggett v. OSP,* 85 Or App 635, 738 P2d 580, *rev den* 304 Or 186 (1987) (to establish an informant's credibility).

[3] Our scope of review is the same as that for a contested case under the Administrative Procedures Act. ORS 421.195; ORS 183.482(8)(c). OAR 291-46-030(5)'s basic evidentiary standard is essentially identical to the evidentiary standard applicable to other administrative proceedings. ORS 183.450(1) requires evidence that reasonably prudent persons would consider to be reliable in the conduct of their "serious" affairs. We have no reason to believe that by omitting the word "serious" in the OAR 291-46-030 evidentiary standard, the Department intended to adopt a lower evidentiary standard than is applicable in other administrative proceedings.

*State v. Lyon, supra,* is the inherent lack of reliability of such evidence. He argues further that the reliability of polygraph evidence cannot hinge upon whether the proceeding in which it is offered is subject to the OEC; that if polygraph evidence is unreliable in proceedings subject to the OEC with their attendant procedural safeguards, it is just as unreliable in other proceedings not subject to the OEC and its safeguards.[4]

Petitioner has misread *Brown* and *Lyon.* We did *not* conclude in those cases that polygraph evidence was unreliable. Rather, we stated in *Brown* that no consensus has emerged about the reliability of such evidence:

> "[N]o judgment of polygraph testing's validity or potential rate of error can be established based on available scientific evidence. The polygraph test is, in reality, a very complex process that involves much more than the instrument or the polygram. Although the instrument is essentially the same for all applications, the types of individuals tested, the training of the examiner, the purpose of the test, the type of test utilized, the questions asked, among many other factors, can differ substantially." *State v. Brown, supra,* 297 Or at 433.

We ruled that polygraph evidence must be excluded because we found that generally its probative value is far outweighed by the reasons for its exclusion. Therefore, even if polygraph evidence is relevant under OEC 401[5] and helpful to the trier of

---

[4] A polygraph test, which records certain physiological phenomena, such as changes in pulse rate, blood pressure, respiration, and electrodermal response, operates on the theory that a person giving a deceitful answer will undergo a significant physiological reaction, while a person telling the truth will have a normal reaction. *See* 3 Wharton's Criminal Evidence § 593, n 66 (14th ed 1987). The accuracy of the polygraph has been the subject of numerous studies, some of which are set out in *State v. Brown,* 297 Or 404, 429-30, 687 P2d 751 (1984). Among other things, the accuracy of the polygraph depends upon the type of the test given and the expertise of the examiner. 297 Or at 436-38.

*State v. Lyon,* 304 Or 221, 744 P2d 231 (1987), stopped the potentially abusive practice of a person taking an *ex parte* polygraph examination, and if passed, stipulating to a second examination. Such a process destroys or greatly diminishes the validity of the polygraph test because the stress of failing the second test and, thus, the necessary anxiety is reduced.

[5] OEC 401 provides:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

fact under OEC 702,[6] OEC 403's[7] balancing test requires its exclusion. *State v. Brown, supra,* 297 Or at 442. In *Lyon,* we extended *Brown's* rationale to stipulated polygraph evidence:

> "We conclude that the stipulation of the parties does not cure [the] difficulties [identified in *Brown*], and that these same considerations necessitate the exclusion of polygraph evidence even when the parties stipulate to its admission." 304 Or at 231.

Other reasons given in *Brown* for excluding polygraph evidence are: the potential for undue delay, the potential for time-consuming and confusing battles of polygraph experts, the potential for confusion of issues resulting from challenges to the accuracy of the test, and the potential for misuse and overevaluation of polygraph evidence by the jury.[8]

■ *Brown* and *Lyon* were decided under the OEC which, with certain exceptions, applies to proceedings in all state courts. *See* OEC 101. However, the proceeding in this case was not subject to the OEC. Rather, it was controlled by ORS 421.190 and OAR 291-46-030. Accordingly, *Brown* and *Lyon* are not controlling here.

ORS 421.190 provides:

---

[6] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

[7] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[8] Not every court, however, shares this court's concerns. In *United States v. Gipson,* 24 M.J. 246, 253 (CMA 1987), the U.S. Court of Military Appeals stated:

"In our assessment, the state of the polygraph technique is such that, depending on the competence of the examiner, the suitability of the examinee, the nature of the particular testing process employed, and such other factors as may arise, the results of a particular examination may be as good as or better than a good deal of expert and lay evidence that is routinely and uncritically received in criminal trials. Further, it is not clear that such evidence invariably will be so collateral, confusing, time-consuming, prejudicial, etc., as to require exclusion."

*See also* O'Conner, *The Polygraph: Scientific Evidence at Trial,* 37 Naval L R 97, 121 (1988); Imwinkelried, *The Standard for Admitting Scientific Evidence: A Critique from the Perspective of Juror Psychology,* 100 Mil L R 99, 114-15 (1983).

"Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedures and the department shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing."[9]

Pursuant to the foregoing authority, the Department promulgated OAR 291-46-030, applicable to administrative segregation hearings. That rule provides in part:

"(5)  The evidence considered by the hearings officer will be of such reliability as would be considered by reasonable persons in the conduct of their affairs; * * *"

Therefore, the questions are: Would reasonable persons in the conduct of their affairs consider polygraph evidence to be reliable, and, if so, would consideration of such evidence deny petitioner a reasonable opportunity for a fair hearing?

Although polygraph evidence is inadmissible under the OEC, many jurisdictions permit the use of such evidence in civil and criminal cases. *See State v. Lyon, supra,* 304 Or at 225 n 2. Some jurisdictions recognize a trial court's discretion to permit the use of polygraph evidence for specific purposes, even absent a stipulation. *See, e.g., United States v. Bowen,* 857 F2d 1337, 1341 (9th Cir 1988). However, jurisdictions that admit polygraph evidence do so only upon stipulation of the parties. *State v. Lyon, supra,* 304 Or at 225-30; *see, e.g., Brown v. Darcy,* 783 F2d 1389, 1394-97 (9th Cir 1986); *State v. Renfro,* 96 Wash 2d 902, 639 P2d 737 (1982), *cert den,* 459 US 482, 103 S Ct 94, 74 L Ed 2d 86 (1982). This result has generally been achieved by court decisions, although some jurisdictions have accomplished the same result by statute. *See, e.g.,* Cal Evid Code § 351.1 (West Supp 1989). Some jurisdictions permit the use of polygraph evidence if offered for impeachment purposes[10] or if offered to corroborate the testimony of a defen-

---

[9] By its terms, ORS 421.190 applies to disciplinary hearings. Although this case involves an administrative segregation hearing, no other statute specifically covers administrative segregation hearings. Therefore, we apply ORS 421.190 because we perceive no reason why a different standard would apply. Petitioner does not suggest otherwise.

[10] This court has not specifically decided whether polygraph evidence is admissible for impeachment purposes. *But see State v. LaStair,* 81 Or App 558, 726 P2d 1193 (1986), *rev den* 302 Or 614 (1987); *State v. Mills,* 76 Or App 301, 310, 710 P2d 148 (1985), *rev den* 300 Or 546 (1986); *see also State v. Brown,* 297 Or at 445 n 36.

dant testifying in his own behalf. *See, e.g., Commonwealth v. Vitello,* 376 Mass 426, 381 NE2d 582 (1978). Some jurisdictions permit the use of polygraph evidence if a defendant "opens the door" to such evidence. *See, e.g., United States v. Hall,* 805 F2d 1410, 1416-17 (10th Cir 1986). Other jurisdictions permit the use of such evidence at proceedings other than trial, such as suppression hearings, sentencing motions, and hearings on motions for new trial. *See, e.g., People v. Barbara,* 400 Mich 352, 255 NW2d 171 (1977).

In *State v. Brown, supra,* this court recognized that many state and federal law enforcement agencies use polygraphs and that polygraphy can play an important role as an investigative aid. 297 Or at 433 n 25. We acknowledged that under proper conditions polygraph evidence may possess some relevancy and probative value that may be helpful to a trier of fact. 297 Or at 438.[11]

In *State v. Lyon, supra,* 304 Or at 235, the specially concurring opinion took judicial notice of "public accounts" that submission to polygraph tests is widely demanded in public and private employment.[12] That opinion also observed that our holdings in *Lyon* which instructs courts to exclude polygraph evidence even if the parties expressly stipulate to its admission and even if no objection is made, go well beyond

---

[11] For extended discussions of polygraphs, *see generally,* 3 Wharton's Criminal Evidence 513-44 § 593 (14th ed 1987); Giannelli and Imwinkelried, Scientific Evidence 242-61, § 8-2, (1986); 1 Wigmore, Evidence § 7a, n 35 (Tillers rev 1983); *see also* Raskin, *The Polygraph in 1986: Scientific, Professional and Legal Issues Surrounding Application and Acceptance of Polygraph Evidence,* 1986 Utah L Rev 29; *Symposium: The Polygraph and the Courts,* 16 U West La L Rev 1-86 (1984).

[12] *See* Hartsfield, Polygraphs, 35 Def L J 289 (1986). The "Employee Polygraph Protection Act of 1988," 29 USC § 2001 *et seq,* enacted after *State v. Brown, supra,* prohibits or limits the use of any type of polygraph test by most private sector employers. For the purpose of our analysis here, the relevant fact is that the Congress *exempted* all government employers and all private employers working with the Department of Defense, Department of Energy, Federal Bureau of Investigation, Central Intelligence Agency, and Defense Intelligence Agency from coverage of the Act. Limited exceptions also were made for security firms, employers authorized to manufacture, distribute or dispense controlled substances, and tests administered in connection with ongoing investigations involving economic loss or injury to the employers' business. From the large number of exemptions found in the Act, we infer that the Congress accepted the arguments of the exempted employers that they consider polygraph evidence to be reliable.

normal procedures for excluding unreliable evidence and constitutes "extraordinary strictures" against questionable evidence. *State v. Lyon, supra,* 304 Or at 235 (Linde, J., specially concurring).

One of the reasons for imposing the "extraordinary strictures" of excluding polygraph evidence under the OEC was this court's concern about the potential for time-consuming and confusing battles over the accuracy of the polygraph tests given in a particular case and over the qualifications and opinions of opposing experts. In this case, however, those concerns are not present. There was no objection to the receipt of the polygraph results, although petitioner had that opportunity.[13] He challenges neither the test given nor the examiner's expertise. He does not argue that the hearings officer misused or was unduly persuaded by the polygraph evidence.

In 1975, the legislature enacted the Polygraph Examiners Act, ORS 703.010 *et seq;* a comprehensive scheme to regulate polygraph examiners and their equipment. Examiners may obtain trainee or general licenses, which must be renewed annually, only after establishing their qualifications by education, experience, and examination. The program is supervised by the Polygraph Examiner Licensing Advisory Committee of the State Board on Police Standards and Training, which has the power to deny, suspend or revoke licenses. Practicing polygraphy without a license, or using a machine which does not meet state standards, is a Class A misdemeanor. In this case, petitioner makes no claim that the provisions of ORS chapter 703 have not been satisfied.

From the foregoing it appears that many reasonable persons find polygraph evidence reliable enough to be considered in the conduct of their affairs. Further, because petitioner requested the polygraph examination and did not object when the polygraph results were received in evidence at the hearing, consideration of such evidence did not deny him a reasonable opportunity for a fair hearing. Accordingly, the hearings

---

[13] We are not here concerned with the use of polygraph evidence in an *ex parte* proceeding, or its use against a party other than the person who consented to its use.

officer did not err in considering the polygraph evidence in reaching his conclusion.[14]

■     We next consider whether there is substantial evidence in the record to support the Superintendent's order. Substantial evidence exists to support a finding of fact when the record viewed as a whole would permit a reasonable person to make that finding. ORS 183.482(8)(c). Constitutional due process is satisfied by an even lower standard, *viz.*, if there is any evidence in the record that could support the conclusion reached by a disciplinary board. *See Superintendent v. Hill*, 472 US 445, 454-56, 105 S Ct 2768, 86 L Ed 2d 356 (1985).

The hearings officer made the following findings of fact: In February 1984, petitioner attempted to escape from OSP by removing his cell window pane, cutting out two cell bars and the outside metal screens, and knotting pants and sheets together to make a rope. For that attempt, he received six months in disciplinary segregation. In April 1984, while returning to OSP from the Marion County Courthouse, petitioner again attempted to escape. He managed to remove a belly chain and hand and leg restraints, and he jumped barefoot from the prison transport van. This attempt resulted in an additional six months in disciplinary segregation.

In July and November 1984, and again in January 1985, petitioner was found in possession of various handcuff keys, files, hacksaw blades, pins, mirrors, metal objects and lock picks; was found to have been in unauthorized areas; and he was found to have cut a cell bar, resulting in additional disciplinary segregation. He was released from disciplinary segregation in August 1986 after serving a total of 30 months for escape and misconduct related to dangerous contraband.

On different occasions in July 1987, tower officers observed petitioner with several unidentified inmates pacing outward from the prison wall. An inmate would stand next to the wall with arms extended over his head while the others stood back and appeared to be observing how far the wall extended above the first inmate's outstretched arms. That conduct could reasonably be interpreted as measuring the

---

[14] We do not now decide whether the results would have been admissible if petitioner had objected at the hearing.

wall. Also in July 1987, a corrections officer searched petitioner's person and found five pieces of paper containing geometrical, numerical, and letter configurations that appeared to be in some kind of code. Petitioner testified that the writings were religious notes.[15] In August 1987, a tower officer observed petitioner and an inmate named McClary speaking with each other while looking at the prison wall and the fence between the towers. McClary had been transferred to OSP after his escape from California's Folsom State Prison by climbing a wall in May 1986 and subsequent recapture. These actions by two known escape-prone inmates could reasonably be interpreted as evidence that petitioner was planning an escape.

In August 1987, an Oregon State Police detective, who is a licensed polygraph examiner, conducted a polygraph examination at petitioner's request. The results of the examination indicated that petitioner had been deceptive in denying that he had been planning an escape.

We conclude that the foregoing findings are supported by substantial evidence in the record viewed as a whole and that they support the Superintendent's order to administratively segregate petitioner as an escape risk.[16]

The decision of the Court of Appeals is affirmed. The order of the Superintendent is affirmed.

---

[15] The hearings officer questioned petitioner about the writings:

"SANTOS: * * * Now there are scribblings from three different pages, and according to Capt. Patton, these were taken from you. Uh, I'm showing them to you, you recall these?

"SNOW:     Yeah.

"SANTOS: Okay. What are they?

"SNOW:     They're, uh, religious notes.

"SANTOS: Religious notes?

"SNOW:     Yeah.

"SANTOS: Um-hum. What religion are you?

"SNOW:     Catholic, Roman Catholic.

"SANTOS: Well, I'm Roman Catholic, I've never seen uh, symbols such as these.

"SNOW:     Well, that's my business, that's why I put it like that."

[16] We have considered petitioner's remaining arguments and find they lack merit.

**FADELEY, J.,** specially concurring.

The result in this case is unobjectionable because the petitioner requested the polygraph test in connection with the specific disciplinary charges, the governmental agency conducting the hearing offered the test results and petitioner made no objection on the merits of the reliability or usefulness of those specific results at the administrative hearing. The issue was not preserved for review on the *merits* of whether a decision may be based upon testimony about the results of polygraph in general or of this polygraph in particular.

The panegyric to the polygraph which is sung in the lead opinion is not joined by me. The praise is neither presented as if it were dicta nor based on an analysis of appropriateness for admission which relies upon the facts and circumstances of this case. Since I do not agree with the blanket proposition that reasonable persons would invariably, or most usually, find polygraph results sufficiently reliable to be determinatively considered in the conduct of their affairs, concurrence in the result in this case is far enough to go. I specifically do not agree that the legislature's enactment of a licensing law for polygraph examiners in 1975 provides any more guarantee of accuracy than I would agree that licensing of any other profession guarantees either the efficacy of professional conduct or the accuracy of the tools and techniques employed by a practitioner to arrive at professionally desired outcomes.

Scientific reservations about polygraphs as truth testers recounted in *State v. Brown,* 297 Or 404, 687 P2d 751 (1984) and *State v. Lyon,* 304 Or 221, 744 P2d 231 (1987) cannot be so easily reconciled with admission of the operator's opinion of the results into evidence as the lead opinion in this case concludes. In *Brown* and *Lyon,* the law is that polygraph results may not be used to convict or to avoid conviction as a criminal. However, the current opinion seems to say that, once convicted, the polygraph may be used to justify extraordinary restraints in addition to the sentence of imprisonment. This is no case requiring us to adopt diverging rules with an anomalous appearance. In any event, no scientific or adversarial record made at the hearing level is present in this case to support adopting a divergent rule.

I concur in the result because no objection on the merits of use of polygraph results as evidence is preserved in the record.