Argued and submitted May 13, reversed and remanded for reconsideration in part
on petition; otherwise affirmed on petition and cross-petition July 3, 1996

Michael CANFIELD
and Susan Canfield,
*Petitioners - Cross-Respondents,*

*v.*

YAMHILL COUNTY,
*Respondent,*

*and*

Troy RECH
and Allison Laridon,
*Respondents - Cross-Petitioners.*

(95-152; CA A92554)

920 P2d 558

John Bridges argued the cause for petitioners - cross-respondents. With him on the briefs was Brown, Tarlow & Berry, P.C.

John C. Pinkstaff argued the cause for respondent.

Elliott C. Cummins argued the cause for respondents - cross-petitioners. With him on the brief was Cummins, Goodman, Fish & Peterson, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Respondents Rech and Laridon (respondents) applied for, and Yamhill County approved, conditional use permits for respondents to operate a boarding kennel and home occupation pet grooming facility. Petitioners appealed to LUBA, asserting numerous challenges to the county's decision. LUBA rejected all but one of petitioners' contentions but remanded on the basis of that contention for the county to make further findings and to determine whether the proposed use complies with the requirement of the county zoning ordinance that a "home occupation shall not generate traffic or parking beyond what normally occurs in the applicable zoning district." Petitioners seek review and respondents cross-petition. We affirm in part and reverse in part.

Petitioners also make numerous arguments to us. Of those that were preserved below and are adequately assigned here, only one requires extensive discussion. Petitioners contend that LUBA erred in the way that it applied—or failed to apply—the substantial evidence test to petitioners' fifth assignment of error in their brief to LUBA. Petitioners argued in that assignment that there was a lack of substantial evidence to support the county's findings that the anticipated traffic effects of the proposed uses were consistent with applicable approval criteria in the zoning ordinance.[1] After noting that the county's findings explained the bases for its conclusion and that the county's and respondents' arguments to LUBA identified supporting evidence in the record, LUBA concluded:

> "Petitioners advance several arguments as to why petitioners believe the evidence upon which the county based its conclusion is either inadequate or insubstantial. However, while petitioners assert there is evidence in the record that conflicts with the county's findings, petitioners refer us

---

[1] Petitioners argued in the same assignment to LUBA that the noise that the uses will produce is also contrary to the ordinance. Although petitioners contend here that LUBA erred in rejecting that argument, that contention is among the ones that we do not believe require discussion. The rest of the discussion of the assignment and our disposition relate only to the traffic issue raised in the assignment.

to no evidence in the record that either refutes or undermines the evidence upon which the county based its conclusion. Without references to evidence in the record which so undermines the evidence upon which the county based its conclusion as to compel a conclusion that a reasonable person could not have reached the county's conclusion, we cannot find that the county's findings lack substantial evidence."

Petitioners offer two reasons for holding that LUBA erred in that conclusion: First, they maintain that their presentation to LUBA did sufficiently identify the nature and location of the evidence in the record that detracts from the county's findings; and second, their argument was, in part, that there was no evidence in the record that supports the findings and, therefore, they were not obliged to cite any "countervailing" evidence in order to have at least that aspect of their argument considered by LUBA according to its terms. Instead of giving the argument full consideration, petitioners continue, LUBA simply dismissed out of hand their contention that there was *no substantial supporting evidence,* on the ground that petitioners had not identified and cited any evidence *contrary* to the findings. We disagree with petitioners' first point but, for the reasons that follow, we agree generally with their second.

In *Younger v. City of Portland,* 305 Or 346, 752 P2d 262 (1988), the Supreme Court held that, when confronted with substantial evidence questions, LUBA is to review local findings to determine whether they are supported by "substantial evidence in the whole record." We explained in *Eckis v. Linn County,* 110 Or App 309, 311-12, 821 P2d 1127 (1991) (citing *Younger,* 305 Or at 358):

"LUBA 'must consider all the evidence in the record' to determine whether the evidence supporting a local finding, viewed with 'countervailing' evidence, would enable a reasonable factfinder to make the finding. The court rejected the so-called 'any evidence' test, under which any supporting evidence, 'viewed in isolation,' constitutes substantial evidence."

We noted in *Eckis* that *Younger* and related cases "do not address whether," in applying the test, "it is the reviewing body or the parties that have the laboring oar in

identifying where the evidence is and what it is." *Id.* at 312. We cited *Oregon State Parks v. City of Portland*, 96 Or App 202, 772 P2d 435 (1989), as the previous case that came the closest to dealing with that question. We said in *Oregon State Parks*:

> "LUBA sustained the assignment, without deciding its merits fully, on the ground that city's brief did not contain adequate citations to the record to show where the evidence in support of its decision could be found. LUBA explained that '[w]hen a substantial evidence challenge is made, we rely on respondents to direct our attention to evidence in the record that is sufficient to meet the challenge.' Without commenting on the correctness of LUBA's 'reliance' formulation when an appellant asserts that there is an *absence of supporting* evidence, we do not agree that the party defending a finding has the burden that LUBA would place on it when, as here, the contention is that the *detracting* evidence makes the finding unsupportable in the light of the whole record.
>
> "The test that LUBA must apply in response to such a contention must be based on the evidence that supports and that militates against the finding in the whole record. *Younger v. City of Portland*, 305 Or 346, 350-58, 752 P2d 262 (1988). We do not imply that LUBA must search the record, without guidance from the parties. However, we do not agree that the guidance must come from the defending party alone. The normal rule of review is that the appellant must demonstrate where and why the decision that it challenges is erroneous. That rule may be circular when the issue is whether there is any evidence to support a finding, because an appellant who argues that there is a total absence of proof cannot be expected to identify the whereabouts of evidence that it asserts does not exist. However, the rule poses no such problem when the appellant makes a 'whole record' challenge to the finding before LUBA. The defending party might sometimes disserve its position on the merits if it points to no concrete evidence in response to such a challenge. However, we do not agree with LUBA that the party is not entitled to have the merits decided." 96 Or App at 204-05. (Emphasis in original; footnotes omitted.)

After quoting that language, we concluded in *Eckis*:

> "The import of that statement is that, at least in situations where there is some evidence that supports a finding,

it is the parties' burden to attack or defend the finding by identifying the supporting or countervailing evidence on which they rely. We now hold that that is the rule. LUBA is not required to search the record, looking for evidence with which the parties are presumably already familiar. The identification of the evidence is part of advocacy." 110 Or App at 313. (Footnote omitted.)

In *Friends of Bryant Woods Park v. City of Lake Oswego*, 126 Or App 205, 868 P2d 24 (1994), we refined the *Eckis* principle in some substantive particulars; none of *those* is material here. However, the following observation we made in *Friends of Bryant Woods Park is* germane:

"We note that *Eckis* states a rule of procedure, but it does not change the nature of LUBA's task in dealing with substantial evidence issues, *i.e.*, to determine whether the evidence in the *whole* record would allow a reasonable fact-finder to make the challenged finding." 126 Or App at 208. (Emphasis in original.)

This case presents a variation on the theme that does not fit the precise pattern of the earlier cases. The county and respondents provided LUBA with citations to evidence that, they maintained, supported the county's findings. Petitioners did not identify evidence that *detracted* from the findings, but they did contend that the *supporting* evidence on which the county relied itself "is either inadequate or insubstantial." That latter contention is the functional equivalent of one, as described in *Oregon State Parks*, "that there is a total absence of proof." As we indicated in that case, unlike the situation where a party argues that the evidence that supports a finding is overcome by or is insubstantial when viewed with detracting evidence that can be identified and located in the record, no identification of evidence in the record is possible or necessary for a party to obtain review by LUBA of a contention that there *is no* evidence that supports the finding.

A party challenging the evidentiary support for a finding may proceed in at least three ways: It may argue that there is no supporting evidence or, synonymously, that the evidence relied on as supporting the finding does not in fact do so; it may argue that, although there is some supporting evidence, that evidence is not substantial when viewed

together with the countervailing evidence in the whole record; or it may make both arguments. Where, as here, the party makes both arguments but fails to make the necessary identification of evidence in the record to substantiate the second, the party is subject to the *Eckis-Friends of Bryant Woods Park* limits in connection with the reviewability of that argument; but it is nevertheless entitled to have the merits of its "no evidence" argument considered and decided, to the extent that argument can stand independently of any unreviewable matter in the other. Accordingly, we remand for LUBA to reconsider petitioners' fifth assignment of error to it in the manner described above.

Petitioners also contend that LUBA made essentially the same mistake in its treatment of their sixth assignment of error in the LUBA proceeding. Be that as it may, we read LUBA's opinion as offering sufficient independent or alternative bases for each of its determinations that are adverse to petitioners under that assignment.

■ We turn to the cross-petition. Section 1004.01(J) of the zoning ordinance provides that a "home occupation shall not generate traffic or parking beyond what normally occurs in the applicable zoning district." LUBA concluded, *inter alia*:

> "The standard requires a comparison of the traffic or parking generated by the proposed use to the traffic or parking that normally occurs in the AF-10 district.
>
> "The problem with the county's findings, however, is that there is no such comparison. There is no factual support in the county's findings to establish the basis upon which the county reached its conclusion. In addition, the only evidence in the record cited by either the county or [respondents] to support the county's conclusion is a summary statement in the staff report that '[t]he grooming facility will not generate a greater amount of traffic than what normally occurs along Highway 99.' This statement does not factually substantiate compliance with the requirement of YCZO 1004.01(J)." (Footnote omitted.)

Respondents argue that the comparison that LUBA's remand requires cannot be what the ordinance contemplates because, in respondents' view, *no* home occupation

that involves *any* traffic or parking could be allowable if such a comparison were required: the home occupation would necessarily account for some traffic and parking that otherwise would not occur in the zone.

 Under ORS 197.829(2), which was enacted in 1995, and legislatively overrules our contrary holdings in *Weeks v. City of Tillamook*, 117 Or App 449, 844 P2d 914 (1992), and related cases, LUBA may make an independent interpretation of a pertinent local provision when the local government has failed to interpret the provision or has not done so in a manner adequate for review.[2] LUBA's interpretation of the ordinance was within its authority.[3]

Further, we believe that LUBA's interpretation was correct. In our view, respondents' understanding of LUBA's interpretation of the ordinance appears to be more dispositively unfavorable to them than it really is. All that LUBA has said as of now is that further proceedings are necessary because the county has not made a comparison between the traffic or parking generated by the proposed use and the traffic and parking that normally occur in the district. There is, frankly, no way that section 1004.01(J) can be read as *not* requiring such a comparison. However, we do not share respondents' apparent view that, by concluding that the provision requires a comparison, LUBA has also interpreted the ordinance to mean that *any* increased traffic or parking would necessarily exceed what "normally occurs" in the district. The legal consequences of the comparison and the ultimate legal effect of section 1004.01(J) on respondents' application are questions that LUBA did not have to and did not decide. Those are questions that LUBA's remand enables the

---

[2] ORS 197.829(2) provides:

"If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, [LUBA] may make its own determination of whether the local government decision is correct."

[3] Respondents do not apprise us whether, in allowing the permits, the county governing body expressed any interpretation of the local ordinance provision to which deference must be accorded under ORS 197.829(1). In any event, respondents do not contend that LUBA exceeded its authority by interpreting the ordinance independently of any interpretation by the county, as distinct from interpreting it wrongly.

county to resolve initially, in deciding how the law applies to the facts—including the comparison—that the remand requires the county to find.[4] The cross-petition does not demonstrate error.

On petition, reversed and remanded for reconsideration of fifth assignment of error to LUBA; otherwise affirmed on petition and cross-petition.

---

[4] We do not decide the underlying question of whether a local government, on remand, may interpret its legislation differently from the way LUBA or we interpreted it, pursuant to ORS 197.829(2), in remanding the decision. We conclude only that the local government may resolve interpretive issues that were not decided by LUBA or us in reviewing the remanded local decision. The underlying question is academic in this case because, as we have noted, LUBA's disposition of the narrow interpretive issue it addressed is the only plausible one. Therefore, no questions of deference or of relative interpretive authority can be presented by the unambiguous facet of the ordinance that LUBA addressed.