Argued and submitted February 10, judgment modified on appeal and affirmed as
modified; affirmed on cross appeal November 13, 2003

Dale W. BAKER,
*Respondent - Cross-Appellant,*
*and*

MOORE CLEAR CO.,
*Petitioner,*

*v.*

CITY OF WOODBURN
and Craig Realty Group-Woodburn, LLC,
*Appellants - Cross-Respondents.*

00C-10897; A114619

79 P3d 901

Paul C. Elsner argued the cause for appellant - cross-respondent City of Woodburn. With him on the briefs were Beery & Elsner, LLP, Perkins Coie LLP, Roger A. Alfred and Michael C. Robinson.

Roger A. Alfred argued the cause for appellant - cross-respondent Craig Realty Group-Woodburn, LLC. With him on the briefs were Michael C. Robinson, Perkins Coie, LLP, Paul C. Elsner and Beery & Elsner LLP.

Donald M. Kelley argued the cause for respondent - cross-appellant Dale W. Baker. With him on the briefs were Patrick E. Doyle and Kelley and Kelley.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Craig Realty Group Woodburn, LLC (Craig Realty), and the City of Woodburn (city) appeal from a judgment in a combined writ of review and declaratory judgment proceeding. The judgment reversed and remanded a city resolution that established a reimbursement district to share the costs that Craig Realty incurred to improve roads to serve the Woodburn Company Stores. The trial court reversed the city's resolution on the ground that it was not supported by substantial evidence. Craig Realty and the city contend that the court erred in reaching that conclusion. Baker, a property owner in the reimbursement district, cross-appeals, asserting that the trial court erred in failing to invalidate the city's resolution and the ordinance under which the city adopted the resolution. We modify the court's judgment on the appeal and affirm on the cross-appeal.

In 1998, the city approved the land use applications of Craig Realty for the development of the Woodburn Company Stores. As a condition of the approval, Craig Realty undertook and paid for improvements to Arney Road and Woodland Avenue (the Arney Road improvement) to meet city standards for the roads. Not including the portion of Arney Road that adjoined the Woodburn Company Stores, Craig Realty's total off-site improvement cost was over $800,000. The conditions of approval further provided that properties that benefitted from the off-site improvements could be required to share the cost of the improvements through the formation of a local improvement district (LID):

> "To accomplish the portion of the project for which costs are to be shared by other benefitted properties, a formal city LID process shall be followed. Exhibits 'A' and 'B' demonstrate a possible method of sharing costs within the LID. *In the event the LID is not approved, the applicant shall abide by the decision of the City Council as to project transportation improvement cost sharing.*"

(Emphasis added.)

Craig Realty ultimately did not seek the formation of an LID; rather, it sought creation by the city of a "reimbursement district" to share the off-site improvement costs, and

the city agreed. By Ordinance 2237, the city established a process to form reimbursement districts. The ordinance provides that a developer who is required or chooses to finance some or all of the cost of a street, water, or sewer improvement other than on the developer's own property may apply for the creation of a reimbursement district for the purpose of sharing the costs of that improvement with other benefitted properties. The application may be submitted any time within 180 days after the installation of the public improvement. The city's public works director reviews the application, including the boundary and size of the reimbursement district, the cost for which the developer is to be reimbursed, and the methodology for spreading the cost among the properties within the reimbursement district.

The ordinance defines a reimbursement district as "the area which is determined by the city council to derive a benefit from the construction of public improvements, financed in whole or in part by the Developer." A "reimbursement fee" is allocated to benefitted properties by a resolution of the city council. The fee is computed by the city for all properties within the reimbursement district that have the opportunity to use the public improvements, excluding property owned by or dedicated to the city or the State of Oregon. The fee is not assessed when it is allocated to the affected properties. Rather, it becomes due and payable if, within 10 years after the date of formation of the district, a property owner of the affected property applies for and receives approval from the city for a development permit, a permit for connection to the public improvements, a permit for new construction or a permit for additions, repairs, alterations, or modifications exceeding 25 percent of the value of the affected building within any 12-month period. Thus, a property for which no permit is sought within the 10-year period need not pay the fee. The ordinance provides for a public hearing on the proposed reimbursement district. However, it provides that, "because formation of the reimbursement district does not result in assessment against property or lien against property, the public hearing is for informational purposes only and is not subject to mandatory termination because of remonstrances."

Although the ordinance is of general applicability, its introductory "whereas" clauses recite facts and conclusions explaining the necessity of the enactment: the final land use approvals and conditions relating to Craig Realty's development of the Woodburn Company Stores; Craig Realty's not having sought the creation of an LID; and the city's need to make a decision to share the costs of the Arney Road improvement. The "whereas" clauses also identify certain properties that benefitted from the Arney Road improvement, specifically two developed properties that "have previously imposed City development conditions which require them to share a portion of the cost of constructing the public improvements after the public improvements are completed" (the previously conditioned properties), and two undeveloped properties, including Baker's, that "should be" required to share a portion of the costs of constructing the public improvements at the time the properties are developed (future developable properties).

Craig Realty filed a petition with the city seeking the creation of a reimbursement district for the Arney Road improvements. In September 1999, the city adopted Resolution 1554, which, based on a report of the city's public works director, established a reimbursement district and allocated the costs for street improvements among property owners within the district as a condition for future development or in fulfillment of prior conditions of the development of the property. The district did not encompass a parcel owned by the State of Oregon or two privately owned properties with road frontage. At the relevant time, Baker owned undeveloped land within the district to which a fee of $146,231 was allocated. Baker paid the fee under protest as a condition for the development of a fast food restaurant on the property.

By a combined claim for declaratory relief and petition for a writ of review, Baker challenged both the ordinance and the resolution and sought restitution of the reimbursement fee. The trial court dismissed Baker's writ of review challenge to the ordinance as untimely, and that ruling is not disputed on appeal. The parties agreed at trial that the claim for declaratory relief applied only to the ordinance and that the writ of review proceeding applied only to the resolution.

On cross-motions for summary judgment, the court rejected Baker's challenges to the ordinance but held that the city's resolution was not supported by substantial evidence, ORS 34.040(1)(c), because the city had failed adequately to explain why certain properties were excluded from the reimbursement district and to demonstrate why the city's allocation method was fair. The court ordered restitution of the fee that Baker had paid to the city and remanded the resolution to the city for further proceedings.

Defendants city and Craig Realty appeal from the trial court's judgment on the writ of review, contending that substantial evidence supports the city's resolution. Baker cross-appeals, contending that the trial court erred in upholding the ordinance in its ruling on summary judgment in the declaratory judgment proceeding. He seeks reversal of the court's ruling, a grant of summary judgment in his favor vacating the ordinance and the resolution, and a determination that Craig Realty is required to submit an application to the city to form an LID. He further contends that the trial court erred in giving the city 45 days after the entry of judgment to refund his money and in failing to award prejudgment interest.

There are no disputed issues of fact. We review both the trial court's grant of summary judgment in the declaratory judgment action and the writ of review proceeding for errors of law. *See, e.g.*, ORS 34.100;[1] *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Johnson v. Civil Service Board*, 161 Or App 489, 498, 985 P2d 854, *modified on recons*, 162 Or App 527, 986 P2d 666 (1999); *Landsing Prop. v. City of Portland Fire Code Board*, 94 Or App 154, 156, 764 P2d 616 (1988) (In a writ of review proceeding, "our scope of review is the same as the circuit court's review of the lower tribunal's action.").[2] In reviewing the circuit court's

---

[1] ORS 34.100 provides:

"Upon the review, the court shall have power to affirm, modify, reverse or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or to direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision. From the judgment of the circuit court on review, an appeal may be taken in like manner and with like effect as from a judgment of a circuit court in an action."

[2] ORS 34.040(1) provides:

determination on the writ of review, we consider the record that was before the city council. *See Caffey v. Lane County*, 75 Or App 399, 706 P2d 590 (1985). We are aided in our review by the trial court's thorough written opinion and analysis.

■    We consider first Baker's assignments of error on cross-appeal of the declaratory judgment, contesting the circuit court's rejection of his challenges to the ordinance and the resolution. Baker contends that the ordinance violates section 36 of the city's charter, which provides:

"Action on any proposed improvement, except a sidewalk or except an improvement unanimously declared by the council to be needed because of an emergency, shall be suspended 6 months upon a remonstrance thereto by the owners of a majority of the land to be specially assessed therefore."

In Baker's view, the charter provides a right to remonstrate before the construction of *any* public improvement, and the failure to provide that procedure in this case voids the city's attempt to require property owners to share the costs for the Arney Road improvement. *Brown v. Silverton*, 97 Or 441, 190 P 971 (1920). Baker is incorrect. The charter speaks of a remonstrance of "the owners of a majority of the land *to be specially assessed*." (Emphasis added.) An assessment results in a charge against the property that becomes a lien on the property from the date of the enactment. *See Montgomery Bros. v. City of Corvallis*, 34 Or App 785, 580 P2d 190 (1978). Here, the properties within the reimbursement district are not subject to assessment for the reimbursement fee. *Cf.* ORS 223.389 to 223.401 (describing procedure for making assessments for LIDs). Rather, the fee becomes due only if the property is developed within 10 years of the district's enactment.

"(1)    The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)    Exceeded its jurisdiction;

"(b)    Failed to follow the procedure applicable to the matter before it;

"(c)    Made a finding or order not supported by substantial evidence in the whole record;

"(d)    Improperly construed the applicable law; or

"(e)    Rendered a decision that is unconstitutional."

If the fee is not paid when due, the ordinance authorizes the city to "take any action it deems appropriate, including all legal or equitable means necessary to collect the unpaid amount." Additionally, the developer "shall have a private cause of action against the person legally responsible for paying the reimbursement fee." Critically, however, the ordinance does not authorize the imposition of an assessment that becomes a lien on the property.[3] Consequently, the reimbursement mechanism established by the ordinance is not subject to city charter section 36, which applies only to assessments that become liens on property.

■    Baker further contends that, in establishing the reimbursement district for the Arney Road improvement, the city violated its previous land use ordinances that required Craig Realty to seek to create an LID to recover the costs of the improvement. We agree with the circuit court that the land use approvals reserved to the city the authority to create a reimbursement district as an alternative to the LID. The land use decisions provided that "[i]n the event the LID is not approved, the applicant shall abide by the decision of the City Council as to project transportation improvement cost sharing." Although it is true, as Baker contends, that the land use approvals "conditioned" Craig Realty's development on its use of an LID to recover its improvement costs, they did not prevent the city, under the authority of its home rule charter, from adopting its own method of cost sharing. *See Cole v. Baker*, 82 Or App 108, 114, 727 P2d 171 (1986), *rev den*, 302 Or 614 (1987).

■    Baker also contends that the procedural mechanisms set forth in ORS chapter 223 for the financing of local improvements foreclose local procedures that do not provide at least the same procedural safeguards as state law. Initially, we note that Baker concedes that state law does not

---

[3] The lack of an assessment is not a mere technical distinction. If not paid in full, an assessment becomes a lien on the property that can result in foreclosure and sale. *See* ORS 223.393. That potential consequence necessitates increased procedural protections. *See, e.g., Londoner v. Denver*, 210 US 373, 28 S Ct 708, 52 L Ed 1103 (1908); *Jones v. City of Salem*, 63 Or 126, 131, 123 P 1096 (1912); *Roger v. City of Salem*, 61 Or 321, 333, 122 P 308 (1912) (notice is required before any assessment can be imposed).

*expressly* preempt local regulation of improvement financing.[4] Rather, Baker contends that the reimbursement district bears sufficient similarity to an LID that, by implication, the city must use the same procedural mechanisms available under state law to require property owners to share the costs for the Arney Road improvement. We reject the contention. As the Supreme Court explained in *City of Portland v. Dollarhide*, 300 Or 490, 501, 714 P2d 220 (1986) (quoting *LaGrande/Astoria v. PERB*, 281 Or 137, 148, 576 P2d 1204, *adhered to on reh'g*, 284 Or 173, 586 P2d 765 (1978)):

> "The essential test for displacement of local ordinances (civil or criminal) by state law is whether the local rule is 'incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.' * * * In the area of civil or administrative ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent."

Thus, the fact that the legislature has created procedures for the financing of local improvements does not, in itself, indicate an intention that those procedures be exclusive or that they displace consistent local procedures. Additionally, when, as here, the city is a "home rule" jurisdiction with the broad grant of authority to regulate local conditions, the assumption is that state and local laws act in concert. *Dollarhide*, 300 Or at 501; *LaGrande/Astoria*, 281 Or at 148.

Our first inquiry in considering whether state law preempts the city's ordinance is whether "the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive." *LaGrande/Astoria*, 281 Or at 148. Like an LID, the city's reimbursement district is a method of financing local improvements by distributing the costs of those improvements among locally benefitted properties within a defined "district." We note, however, that

---

[4] In fact, the LID statutes appear to convey an opposite intention; they apply only when the governmental unit has not adopted its own procedures. *See* ORS 223.389(1).

the city's procedure applies only to improvements made by a developer, and the statutory LID procedure applies only to improvements made by a governmental unit.[5] In that sense, the city and state procedures do not relate to the same subject, and so they cannot come into conflict. More importantly, however, unlike an LID, the reimbursement district does not result in an assessment against property. Because of those differences, we conclude that the city's reimbursement district ordinance is not facially incompatible with state law and that the two mechanisms of financing can coexist. *Haley v. City of Troutdale*, 281 Or 203, 210, 576 P2d 1238 (1978); *cf. Bennet v. City of Oceanlake*, 247 Or 539, 543, 430 P2d 1004 (1967) (city could not enact separate procedures for special assessment that bypassed statutorily required notice). We conclude, accordingly, that the statutory provisions for LIDs do not preempt the city's reimbursement district ordinance.

■    In a variation on the preemption theme, Baker contends that the city's reimbursement fees are, in fact, system development charges adopted without compliance with statutory procedures for the imposition of such charges. *See Rogers Machinery, Inc. v. Washington County*, 181 Or App 369, 45 P3d 966 (2002). Once again, Baker is correct that the city's ordinance establishes a reimbursement system similar to the one that applies to system development charges, in that it creates a "reimbursement fee" for existing improvements "assessed or collected at the time of increased usage." ORS 223.299(3), (4)(a). However, as with LIDs, the statutory system development charge scheme appears to apply only to improvements made by a governmental unit rather than by a private individual. *See, e.g.*, ORS 223.309 (requiring the governmental unit to develop a plan that lists all improvements that may be funded with improvement fee revenues); ORS 223.307(4) (requiring that any capital improvement being funded wholly or in part with system development charge "revenues" be included in the plan adopted by a governmental unit pursuant to ORS 223.309). And, in contrast with system development charges, which typically are assessed jurisdiction-wide, *see, e.g.*, *L.A. Development v. City of*

---

[5] For purposes of ORS 223.389(2)(a), a "local improvement" is "a capital construction project, or part thereof, undertaken by a governmental unit." *See also* ORS 10.140; ORS 223.001(9).

*Sherwood*, 159 Or App 125, 977 P2d 392, *rev den*, 329 Or 61 (1999), the city's fee is limited to properties that are within the reimbursement district. Finally, the city's fee is expressly excluded from the statutory provisions for system development charges. ORS 223.299(4)(b) provides that a system development charge "does not include any fees assessed or collected as part of a local improvement district or a *charge in lieu of a local improvement district assessment*[.]" (Emphasis added.) As indicated in the "whereas" clauses of the city's ordinance and resolution, the reimbursement district ordinance was enacted as a consequence of Craig Realty's failure to seek the creation of an LID. We conclude, for that reason, that the reimbursement fee is a charge "in lieu of a local improvement district assessment."

For the reasons explained, we conclude that the reimbursement fee is not a system development charge and is not subject to the procedures applicable to system development charges. We affirm without discussion Baker's remaining challenges to the trial court's decision.

Craig Realty's and the city's first and second assignments of error on appeal both relate to the trial court's decision on the writ of review. They contend that the trial court misapplied the substantial evidence standard of review and substituted its judgment for that of the city regarding the selection of properties to be included in the reimbursement district and the method to allocate costs within the district. In our review of the trial court's judgment on a writ of review, we are asked to determine whether the city's "finding or order" is supported by substantial evidence in the whole record. ORS 34.040(1). We conclude, with one exception, that the city's resolution is supported by substantial evidence.

In reviewing for substantial evidence, the court is not permitted to substitute its judgment for that of the city or to reweigh the evidence; it must simply decide whether the record contains substantial evidence to support the decision. *Braidwood v. City of Portland*, 24 Or App 477, 480, 546 P2d 777 (1976). Substantial evidence is different from any evidence or some evidence. *Snow v. OSP*, 308 Or 259, 268, 780 P2d 215 (1989); *Hamel v. Johnson*, 173 Or App 448, 25 P3d 314, *rev den*, 333 Or 162 (2001); *Canfield v. Yamhill County*,

142 Or App 12, 15, 920 P2d 558 (1996). There is substantial evidence to support a finding when, viewing the record as a whole, a reasonable person could make the finding. *Thomas Creek Lumber and Log Co. v. Board of Forestry*, 188 Or App 10, 18, 69 P3d 1238 (2003). Although the city's resolution does not expressly identify the city's "findings," the city's decisions on the make-up of the reimbursement district and the method of allocating the cost of the improvements are the factual predicates for the resolution and therefore constitute "findings." The question raised by the appeal is whether, in light of the record before the city council, a reasonable person could make those findings.

The report of the city's public works director, adopted and incorporated in the resolution, is the city's evidence in support of the resolution. We consider first the director's recommendation on the make-up of the reimbursement district. The director said that the district includes privately owned undeveloped properties that have benefitted from the improvement and privately owned developed properties that are subject to conditions for the sharing of the cost of improvements. As Baker contends, the director's report does not explain the city's reasoning for either including or omitting from the district each property that potentially benefits from the improvement. And we further agree with Baker that, contrary to Craig Realty's and the city's argument, the director's recommendation as to the make-up of the district was not inevitably dictated by the ordinance. For example, although the ordinance identified in the "whereas" clauses specific properties that should be included in the district, the ordinance does not preclude the inclusion of other properties that might also benefit from the improvements. Additionally, although the ordinance excludes public properties from payment of the reimbursement fee, it does not necessarily exclude them from the district. We conclude, nonetheless, that the director's report constitutes substantial evidence in support of the district's resolution. That is, in the absence of evidence contradicting the director's recommendation, the city could reasonably rely on the director's report in support of its finding concerning the properties that are specially benefitted and that should be included in the district.

As to the allocation of the cost of the improvement, the director explained that he chose a method that took into

account a property's area and frontage, so as to fairly distribute costs among properties that benefit by being adjacent to Arney Road and properties that benefit from their proximity to the improvement but that have no frontage on it. The director did not explain why, in his computation of the percentage of each property's share, he chose to allocate 40 percent to frontage and 60 percent to area, as opposed to some other ratio, other than to explain that the chosen division would "avoid an unreasonable subsidy to any property" for the benefits of the improvements. Once again, although the details are sparse, we conclude that the director's report constitutes substantial evidence in support of the resolution's allocation method.

The record falls short in one respect, however. Baker's property has frontage on two roads, Arney Road and "Old Arney Road." The director's map that is attached to his report shows that the reimbursable portion of the improvement is along Arney Road and does not include Old Arney Road. It appears, however, that, in calculating Baker's share of the improvement's frontage, the director attributed to Baker frontage on Old Arney Road. If the improvements along Arney Road only are reimbursable, then it was error to include Old Arney Road in the improvement frontage attributable to Baker. We therefore modify the judgment on the writ of review and remand with instructions to remand the resolution to the city for reconsideration of the frontage attributable to Baker and, if necessary, for recalculation of the allocation of the improvement costs.

Judgment modified on appeal to delete award of restitution and to remand to city for reconsideration of frontage attributable to Baker and, if necessary, for recalculation of allocation of improvement costs, and affirmed as modified; affirmed on cross-appeal.